IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHELLE MCDONALD-WITHERSPOON, :
Individually and as Administratrix of the :
ESTATE OF KENYADA JONES : CIVIL ACTION
    v. : NO. 17-1914
   :
CITY OF PHILADELPHIA, et al. :

O'NEILL, J.                                                    August 25, 2017

## MEMORANDUM

Plaintiff Michelle McDonald-Witherspoon brings this action on her own behalf and on behalf of her son, who died while in custody at the Curran-Fromhold Correctional Facility (CFCF). She brings claims against CFCF, the City of Philadelphia, the Philadelphia Adult Parole and Probation Department (PAPP), two parole officers, Amber E. Browne and Jeanette Palmer and two private corporations that allegedly contracted with the City to provide mental health services to inmates at CFCF—Corizon Health, Inc. and MHM Services, Inc. All defendants except Corizon and CFCF move to dismiss either in part or in full.[1] I will deny in part and grant in part the motion of defendants City of Philadelphia, Browne and Palmer. I will grant MHM's and PAPP's motions, but I will allow leave to amend some of plaintiff's dismissed claims.

## BACKGROUND

On June 28, 2016, Kenyada Jones, who was on parole or probation for a DUI charge, met with his parole officer, defendant Browne, and with defendant parole officer Palmer. Compl. ¶ 12. Plaintiff, Jones's mother, was contacted in the course of this meeting, spoke with Browne,

---

[1] Corizon has filed an answer and a crossclaim against MHM. Dkt. No. 12. CFCF has not entered its appearance, according to the docket. The docket also does not show a certificate of service for CFCF.

and decided to go pick up Jones from the meeting.  Id.  Plaintiff does not explain what occurred during the gathering, but she states that "by the time she got there, [her son] had already been taken away"—i.e., arrested.  Id.  She alleges that he was "unlawfully searched, . . . arrested and . . . imprisoned" because he "was mentally disabled and African-American," the defendants "having animus against [Jones] by reason of what he was."  Id. ¶¶ 13, 14.

Jones suffered from paranoid schizophrenia, bipolar disorder and other similar conditions.  The week before his parole meeting, he had admitted himself to a psychiatric hospital, where he had remained for treatment from June 16 until June 22.  Id. ¶¶ 9–11.

After his arrest, plaintiff was incarcerated at CFCF, "a state correctional facility, owned and operated by [the City of Philadelphia]."  Id. ¶ 3.  On July 2, after four days in prison, Jones was found on the floor of his jail cell, unresponsive and taking slow breaths.  Id. ¶ 19.  After medical personnel arrived, he was pronounced dead.  Id.  An autopsy revealed that the cause of death was an excessive intake of Amlodipine, a prescription medication used to control high blood pressure.  Id. ¶¶ 20, 21.  Jones's stomach had a concentration of Amlodipine at more than eleven times the maximum therapeutic level.  Id. ¶ 20.  A note in CFCF medical records on Amlodipine states, "no KOP [keep on person]."  Id. ¶¶ 18.

Plaintiff brings this case on behalf of herself and Jones, as the administratrix of his estate.  Id. ¶ 1.  She alleges defendants[2] "gave misinformation and/or inadequate information to the staff at CFCF regarding [Jones's] mental/psychiatric condition and needs, causing [Jones] to be deprived of needed treatment and medication."  Id. ¶ 15.  She alleges defendants failed to "place him in a jail cell that was appropriate for his mental state," failed "to give him needed psychiatric

---

[2] Here, as in many places, the complaint does not specify which defendants it is referring to.

and medical treatment," and gave him "an entire month to three months' worth of the medication Amlodipine to keep on his person (30 to 90 pills at a time)," despite its known risks. Id. ¶ 18. She contends defendants "acted pursuant to policies, procedures and customs of [d]efendants City of Philadelphia, PAPP and CFCF." Id. ¶ 24.

Plaintiff initiated litigation in the Philadelphia County Court of Common Pleas on behalf of herself and decedent Jones. The City, Browne and Palmer removed the action to federal court. Thereafter, the City, Browne and Palmer filed a motion to dismiss, Dkt. No. 14; defendant PAPP filed a motion to dismiss, Dkt. No. 15; and defendant MHM filed a partial motion to dismiss, Dkt. No. 13. Plaintiff filed responses to all three motions and defendant PAPP filed a reply.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true." Id. (citations omitted). This "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id. at 556. "To prevent dismissal, all civil complaints must set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009),

quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  The Court also set forth a two part-analysis for reviewing motions to dismiss in light of <u>Twombly</u> and <u>Iqbal</u>:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

<u>Id.</u> at 210–11, <u>quoting</u> <u>Iqbal</u>, 556 U.S. at 679.  The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  <u>Id.</u>, <u>citing</u> <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 234–35 (3d Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  <u>Iqbal</u>, 556 U.S. at 679, <u>quoting</u> Fed. R. Civ. P. 8(a)(2).

When dismissing a case for failure to state a claim in civil rights cases, district courts must offer amendment "unless doing so would be inequitable or futile."  <u>Fletcher-Harlee Corp. v. Pote Concrete Contrs., Inc.</u>, 482 F.3d 247, 251 (3d Cir. 2007); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

## DISCUSSION

Plaintiff's complaint sets forth the following causes of action on Jones's behalf:  (1) federal constitutional claims under the Civil Rights Act, 42 U.S.C. § 1983 on behalf of herself and Jones; (2) claims for violations of Titles II and III of the Americans with Disabilities Act and § 504 of the Rehabilitation Act on Jones's behalf; and (3) state law claims including violations of the Pennsylvania Human Relations Act and the Pennsylvania Constitution, negligence, medical/psychiatric malpractice, intentional infliction of emotional distress, false arrest, false imprisonment, malicious prosecution and abuse of process and a claim under the Pennsylvania

Wrongful Death and Survival Acts, 42 Pa. Cons. Stat. §§ 8301 & 8302. The complaint also sets forth claims for both intentional and negligent infliction of emotional distress on plaintiff's behalf.

I will dismiss all of the claims except the § 1983 claim against the City of Philadelphia for violation of Jones's rights. I will, however, allow leave to amend with respect to several of the dismissed claims.

## I.    Section 1983 Claims

A prisoner's right to adequate medical care derives from the Eighth Amendment proscription against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 103–105 (1976). In order to set forth a cognizable claim for violation of this right under 28 U.S.C. § 1983, a plaintiff must allege facts showing that the defendant was deliberately indifferent to a serious medical need. Id. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The standard requires showing "that the official was subjectively aware of the risk" and that the defendant was more than merely negligent. Id. at 829, 837. Similarly, the Due Process Clause of the Fourteenth Amendment entitles a detainee, rather than a convicted prisoner, "no less a level of medical care than that required for convicted prisoners by the Eighth Amendment." Colburn v. Upper Darby Twp., 838 F.2d 663, 668 (3d Cir. 1988) ("Colburn I"). Custodial officials who "know or should know of the particular vulnerability to suicide of an inmate" have a constitutional obligation "not to act with reckless indifference to that vulnerability." Woloszyn v. Cty of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005), quoting Colburn I, 838 F.2d at 669.

Plaintiff contends all defendants are liable under § 1983 for their reckless indifference to Jones's vulnerability to suicide.

### A.      City of Philadelphia

Plaintiff's allegations against the City are sufficient to state a claim for violation of Jones's constitutional rights under § 1983.

In order to recover against a municipality under § 1983, a plaintiff must allege that the City itself caused an injury through the implementation of a policy, practice or custom. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978); Natale v. Camden Cty Corr. Facility, 318 F.3d 575 (3d Cir. 2003). Section 1983 imposes liability on a municipality where, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997) (emphasis in original). The plaintiff must offer "support that would suggest that [the things that] happened to him . . . were not idiosyncratic actions of individual public actors." Elias v. Twp. of Cheltenham, No. 14-6117, 2015 U.S. Dist. LEXIS, at *9 (E.D. Pa. Jan. 28, 2015) (citations and internal quotation marks omitted). Usually, this standard requires showing "a pattern of similar constitutional violations by untrained employees." Thomas v. Cumberland Cnty., 749 F.3d 217, 223 (3d Cir. 2014), quoting Connick v. Thompson, 563 U.S. 51, 52 (2011). But "in certain situations, the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations." Thomas, 749 F.3d at 223, quoting Bryan Cnty., 520 U.S. at 390 n.10; see also Natale, 318 F.3d at 584.

For example, in Natale v. Camden County Correctional Facility, a diabetic was not provided the insulin that he needed upon incarceration. Id. The Court of Appeals found that a

prison with "no policy ensuring that an inmate having need for medication for a serious medical condition would be given that medication during the first 72 hours of incarceration" was a "particularly glaring omission in a program of medical care" that a jury could conclude was "sufficiently obvious to constitute deliberate indifference to those inmates' medical needs." Id. at 584–85; see also Berg v. Cty. of Allegheny, 219 F.3d 261, 277 (3d Cir. 2000) (holding that a single incident could give rise to Monell liability "where a failure to protect against 'simple mistakes' was likely to lead to constitutional violations").

With regard to mental health care in prisons, a prison is "deliberately indifferent" where it knows of an inmate's "significant mental health issues but is unprepared to take the steps necessary to address those issues." A.M. ex rel. J.M.K. v. Luzerne Cnty Juvenile Det. Ctr., 372 F.3d 572, 585 (3d Cir. 2004). In J.M.K. v. Luzerne County Juvenile Detention Center, the plaintiff presented evidence that the detention facility was aware of a child's serious mental health and behavioral problems, which required medication and psychiatric care, but did not consult mental health professionals or refer him for treatment after he misbehaved. Id. at 585. The Center also "had a seriously flawed intake and assessment system, which failed to provide for the sharing and dissemination of critical information about [the child's] mental health history." Id. These and other deficiencies may have led to the child's abuse by other residents. Id. The Court of Appeals held that Monell liability could be predicated on these facts. Id.

Here, plaintiff alleges the detention facility's awareness of Jones's mental health needs and failure to respond to them, suggesting deliberate indifference on its part. Plaintiff avers that the City failed to diagnose, treat or properly medicate Jones and failed to adequately communicate his medical needs, which led to Jones obtaining a dangerous quantity of a medication that enabled his overdose. Although plaintiff's allegations regarding Jones's care

during the four days of his detention at CFCF are somewhat conclusory, she provides two important specifics: first, she describes his extended hospitalization prior to his arrest, from which one could plausibly conclude that Jones's mental health condition was severe and apparent. Second, she provides the circumstances of his death, from which one could plausibly conclude that the City, in its control of CFCF, employed a seriously flawed assessment, treatment or care system. Therefore, at this stage of the litigation, plaintiff has alleged enough facts to open the doors of discovery into the City's policies and practices regarding the care of inmates with mental health issues.

**B.     Browne and Palmer**

With respect to Officers Browne and Palmer, however, plaintiff has not pled a claim under § 1983 for violation of Jones' Eighth and Fourteenth Amendment rights because she does not allege facts that suggest deliberate indifference to his vulnerability to suicide.

> [A] plaintiff in a prison suicide case has the burden of establishing three elements: (1) the detainee had a particular vulnerability to suicide, (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers acted with reckless indifference to the detainee's particular vulnerability.

Woloszyn, 396 F.3d at 319, quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991) ("Colburn II").

> The detainee's condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death. Moreover, the condition must be one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.

Colburn II, 946 F.2d at 1023 (citation and internal quotations omitted).

In order to allege that an officer knew or should have known of the inmate's vulnerability to suicide, the plaintiff must provide sufficient facts from which one could conclude that the

officer was more than negligent in failing to perceive the detainee's vulnerability.  Colburn I, 838 F.2d at 670.  In Colburn I, the complaint alleged that the defendant custodial officer negligently and/or recklessly searched and supervised the detainee upon arrest, thereby failing to find a handgun she had in her possession.  Id. at 665.  She later used the gun to kill herself in her jail cell.  Id.  The complaint further alleged that the custodial officer knew or should have known of the detainee's vulnerability to suicide because, the day before the detainee's arrest, the police had come to her apartment in response to her attempted suicide and because there were multiple signs at her arrest that she was at risk, including that:  she had obvious scars on her wrist from another previous attempt; another officer had to prevent her from swallowing three Valium pills she had removed from her purse; the police had detained her "for her own protection"; and she had a live round of ammunition in her pocket.  Id. at 670.  The Court of Appeals held that these allegations could fairly be read to allege the official's knowledge of the risk of suicide and failure to take reasonable measures to guarantee the detainee's safety.  It therefore found that the complaint stated a § 1983 claim against the custodial officer.  Id.

Where, however, a plaintiff alleges that a custodial officer failed to infer the inmate's vulnerability to suicide from wrist scars alone, she does not state a claim against the officer. Freedman v. Cty. of Allentown, 853 F.2d 1111, 1115–16 (3d Cir. 1988).  In Freedman v. City of Allentown, Freedman was arrested and shortly thereafter killed himself in his prison cell.  Id. at 1113.  The plaintiff, as administrator of Freedman's estate, alleged the officer who met with and then arrested Freedman knew or should have known of Freedman's suicidal tendencies because the officer observed scars on Freedman's wrist, evincing previous suicide attempts.  Id.  The plaintiff argued the officer could be held liable for failing to communicate Freedman's vulnerability to the prison.  Id.  The Court of Appeals found these allegations insufficient to state

a claim against the officer.  Id. at 1115–16.  Viewing the complaint in the light most favorable to the plaintiff, the court assumed "that a reasonably competent prison official should have known and identified these marks as 'suicide hesitation cuts,'" but nevertheless held that "the failure to recognize them as such, without more, amounts only to negligence and therefore fails to support a claim under section 1983."  Id. at 1116.  The Court of Appeals distinguished the allegations in Freedman from those in Colburn I, in which the complaint included facts additional to scars suggesting the official's knowledge of the detainee's vulnerability to suicide.  Id.

Here, plaintiff has not alleged sufficient facts showing that Browne and Palmer were more than negligent in overlooking Jones's vulnerability to suicide.  Plaintiff's allegations with respect to Browne and Palmer are thin.  She merely states that Jones

> was seen and handled by Browne and Palmer.  While there, Plaintiff spoke with Browne and told Browne that she, Plaintiff, was on her way to Browne's office to pick up her son.  Plaintiff drove there immediately, but by the time she got there, [Jones] had already been taken away.

Compl. ¶ 12.  Plaintiff contends that the parole officers "gave misinformation and/or inadequate information to the staff at CFCF regarding [Jones's] medical/psychiatric condition and needs, causing [Jones] to be deprived of needed treatment and medication and to receive improper treatment and medication."  Compl. ¶ 15.  But plaintiff does not allege Jones had previously attempted suicide, much less that Browne or Palmer knew that he had.  Although she alleges Jones was hospitalized for psychosis the week before his meeting with Browne, she does not allege that anyone told Browne and Palmer of this hospitalization or informed them that suicidal inclinations accompanied his psychosis.  Therefore, plaintiff's allegations regarding Browne and Palmer are insufficient to plausibly show that Browne and Palmer acted with reckless indifference to Jones's vulnerability to suicide.

Plaintiff also asserts that Browne and Palmer "subjected [Jones] to a state-created danger by creating and/or increasing [Jones's] vulnerability to a danger, as a mentally disabled individual . . . ." Compl. ¶ 16. Officials can be held liable under a "state-created danger" theory when "the State takes a person into its custody and holds him there against his will," thereby establishing "a special relationship" with that person and assuming affirmative duties of care and protection. Morrow v. Balaski, 719 F.3d 160, 167 (3d Cir. 2013). To state a claim under this theory, a plaintiff must allege conduct that "shocks the conscience." Id. at 196. Because conduct that "shocks the conscience" is more egregious than conduct showing "reckless indifference," A.M. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 579 (3d. Cir. 2004), allegations of liability under a state-created danger theory are subject to a higher bar than allegations of liability for misconduct in the prison suicide context under Colburn and Freedman. Therefore, plaintiff does not state a § 1983 claim under the state-created danger theory either.

Nonetheless, I am not convinced that any effort by plaintiff to replead the § 1983 claim against Browne and Palmer would be futile. Therefore, I will dismiss plaintiff's § 1983 claim against Browne and Palmer without prejudice and with leave to amend to the extent plaintiff can allege facts sufficient to state a claim.

**C.    MHM**

With respect to MHM, plaintiff has not alleged it had a "policy, custom or practice" that caused violations of Jones's constitutional rights, as necessary to state a claim against it. Like a municipality, a private company acting "under color of state law," as was MHM here, can only be held liable if it violated the plaintiff's constitutional rights through a policy, practice or custom. Mark v. Borough of Hatboro, 51 F.3d 1137, 1147 (3d Cir. 1995). But while plaintiff alleges Jones's injuries were caused by an "officially adopted or promulgated policy of [the City

of Philadelphia], CFCF and PAPP" and pursuant to "a pervasive custom and or practice" of the same defendants, Compl. ¶ 31, plaintiff does not include MHM in these allegations. Thus, plaintiff identifies no policy, custom or practice for which MHM may be held liable under § 1983. Plaintiff admits as much and requests leave to file an amended complaint alleging similar deficiencies against MHM and Corizon. Pl.'s Resp. Opp'n MHM Mot. to Dismiss, Dkt. No. 21-1, at p. 8. I will therefore dismiss plaintiff's § 1983 claim against MHM without prejudice to plaintiff's right to file an amended complaint that pleads a proper § 1983 claim against MHM.

### D.    PAPP

As to PAPP, I will dismiss the § 1983 claims against it because it is immune under the Eleventh Amendment. The Eleventh Amendment immunizes a state from suit in federal court by private parties. Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989). This immunity protects a state entity even when the State is not named a party to the action, so long as the State is deemed to be the real party in interest. Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997). This immunity extends to "an individual judicial district and its probation and parole department," as it is "an arm of the State." Haybarger v. Lawrence Cnty. Adult Probation and Parole, 551 F.3d 193, 197–98 (3d Cir. 2008); Spuck v. Pa. Bd. of Probation & Parole, 563 F. App'x 156, 158 (3d Cir. 2014); see also Henry v. Phila. Adult Prob. & Parole Dep't, No. 05-4809, 2007 U.S. Dist. LEXIS 66247, at *12 (E.D. Pa. Sep. 6, 2007) ("Because the PAPPD is an agency of the First Judicial District, the PAPPD is an arm of the state" and § 1983 claims against it are barred by the Eleventh Amendment).

A party may waive its Eleventh Amendment immunity by voluntarily invoking federal court jurisdiction. Lombardo v. Pa. Dept. of Public Welfare, 540 F.3d 190, 196 (3d Cir. 2008). A State's voluntary removal of a matter from state to federal court constitutes such a waiver. Id.;

see also Lapides v. Bd. of Regents of Univ. Sys. Of Geor, 535 U.S. 613, 624 (2002). However, where a State did not request the removal, a court "should examine the extent to which a State has participated in the lawsuit and whether it has defended the case on the merits." Borrell v. Bloomsburg Univ., 955 F. Supp. 2d 390, 400 (M.D. Pa. 2013), citing Coll. Sav. Bank v. Fl. Prepaid Postsecondary Educ. Expense Bd., 131 F.3d 353, 365 (3d Cir. 1997). "[M]erely because a state appears and offers defenses on the merits of the case [ ] does not automatically waive Eleventh Amendment immunity." Coll. Sav. Bank, 131 F.3d at 365 (citations omitted).

In the present case, plaintiff filed suit in state court, and defendants Browne, Palmer and the City of Philadelphia removed the action to this Court. The docket contains no consent to removal by PAPP. Rather, PAPP's counsel entered an appearance only to defend the action, filed a single motion for extension of time to respond to plaintiff's complaint and then, in a motion to dismiss, raised sovereign immunity at the earliest stages of the litigation. Its presence in federal court was involuntary and Eleventh Amendment immunity has not been waived. Accordingly, the claims against PAPP under § 1983 for violations of both her own and Jones's constitutional rights will be dismissed. I will deny leave to amend these claims, as amendment would be futile. See Cowell v. Palmer Township, 263 F.3d 286, 296 (3d Cir. 2001) ("[L]eave to amend need not be granted when amending the complaint would clearly be futile.").

E.    **Plaintiff's Due Process Rights**

Plaintiff has not stated an independent claim for violation of her own constitutional Due Process rights under § 1983. Plaintiff alleges that she has claims against all defendants under § 1983 for "deprivation of her liberty interest in the care, custody and maintenance of her family and son." Compl. ¶ 50. The interest protected by the Due Process clause "concerns the right of parents to make critical child-rearing decisions concerning the care, custody, and control of

minors." McCurdy v. Dodd, 352 F.3d 820, 829 (3d Cir. 2003), citing Troxel v. Granville, 530 U.S. 57, 66 (2000). But the parental due process right "must cease to exist at the point at which a child begins to assume that critical decisionmaking responsibility for himself or herself." Id. A parent has a due process right to companionship with her child where the child is a minor and "the state action at issue was specifically aimed at interfering with protected aspects of the parent-child relationship." Id. at 827–28.

Here, Jones was not a minor, but approximately forty-five years old when the events plaintiff describes took place. Compl. ¶ 1. And the alleged state action—mismanaging his medical care while at CFCF—was not aimed at interfering with plaintiff's relationship with Jones.

Plaintiff argues that, because she was Jones's "caretaker . . . due to his psychiatric condition," she has a due process right to a relationship with him. But her argument is unpersuasive. First, plaintiff has not alleged that Jones was so disabled as to be incapable of making critical decisions for himself, such that her parental due process right did not "cease to exist" when he became an adult. Second, even if she were to show the existence of a right to a continued relationship with her son, plaintiff does not allege the state's actions were "aimed at interfering with" that relationship. Therefore, I will dismiss plaintiff's individual § 1983 claim with leave to amend to the extent she can provide allegations sufficient to state a claim.

## II.      ADA and the Rehabilitation Act

Plaintiff also alleges defendants excluded Jones from participation in parole services by reason of his mental health disabilities in violation of Titles II and III of the ADA and § 504 of the Rehabilitation Act. Compl. ¶ 36. I find that she does not sufficiently plead a claim against any of the defendants on this basis.

## A.    Title III of the ADA

Title III creates a private cause of action for individuals seeking an injunction to prevent a place of public accommodation from discriminating against a person on the basis of a disability in the full and equal enjoyment of the facility.  42 U.S.C. § 12182(a).  Plaintiff cannot state a claim under Title III because she does not allege facts showing an injury that confers standing to bring such an action.[3]

In order to show standing to bring a suit under Article III of the United States Constitution, a plaintiff must allege that the defendant caused a legally cognizable injury that is capable of being redressed by a favorable decision.  Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000).  In order to show a legally cognizable injury, a plaintiff seeking prospective injunctive relief must show a real and immediate threat of repeated future harm.  City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983).  Under Title III, prospective injunctive relief is the only type of remedy available.  42 U.S.C. § 12188(a); Brown v. Mt. Fuji Japanese Rest., 615 F. App'x 757, 757 (3d Cir. 2015); Hollinger v. Reading Health Sys., No. 15-5249, 2017 U.S. Dist. LEXIS 12871, at *9 (E.D. Pa. Jan. 30, 2017).

> Because the remedy for a private ADA Title III violation is injunctive relief, courts look beyond the alleged past violation and consider the possibility of future violations.  In other words, a plaintiff seeking relief under Title III must demonstrate that there is a real and immediate threat that it will be wronged again in the future.

Id., citing Brown v. Mt. Fuji Japanese Rest., 615 F. App'x 757, 757 (3d Cir. 2015) (other citations and internal quotation marks omitted).  A plaintiff can show a real and immediate threat

---

[3] Defendants do not raise this argument, as they appear to interpret her ADA claims as being brought solely under Title II.  See MHM Mot. to Dismiss, Dkt. No. 13-1 at 5; City Mot. to Dismiss, Dkt. No. 14 at 13–14.  However, as they argue generally that plaintiff has failed to state any ADA claim, I will address her Title III claim as well.

by alleging either that he intends to return to the place where the alleged discrimination occurred, or that he is deterred from patronizing a public accommodation because of accessibility barriers. Id. at *9–10.

Plaintiff has not brought a proper Title III claim. She brings her ADA claim on behalf of her son, who died while incarcerated at CFCF. She is not seeking an injunction to give her son full and equal enjoyment of any services or accommodations in prison in the future. She cannot allege that he intends to return to prison or that he is deterred from prison because of accessibility barriers. She therefore cannot show a real and immediate threat of repeated future injury. I will dismiss her Title III claim with prejudice.

**B.      Title II of the ADA and the Rehabilitation Act**

I also find that plaintiff has not stated a claim under Title II of the ADA or § 504 of the Rehabilitation Act against Browne and Palmer, the City of Philadelphia, MHM or PAPP.

**1.      Browne and Palmer**

Title II of the ADA only applies to public entities, 42 U.S.C. § 12132, which Browne and Palmer are not. Similarly, the Rehabilitation Act does not hold an individual liable where she does not receive federal aid. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002), citing Garcia v. S.U.N.Y. Health Sciences Ctr., 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."). Therefore, I will dismiss plaintiff's ADA and Rehabilitation Act claims against defendants Browne and Palmer with prejudice.

### 2.      City of Philadelphia

Plaintiff also fails to state a claim against the City of Philadelphia under Title II of the ADA or the Rehabilitation Act because she relies on conclusory allegations rather than describing facts that show the basis for her claim.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The Rehabilitation Act provides similarly except that it applies to "any program or activity receiving Federal financial assistance" and requires a plaintiff to show that his disability was the sole reason for the discrimination, not merely one reason.  29 U.S.C. § 794(a); CG v. Pa. Dep't Educ., 734 F.3d 229, 235–36 (3d Cir. 2013).

Plaintiff merely states, without support, that Jones was "unlawfully arrested" during the June 28 probation meeting "for the reason that [Jones] was mentally disabled and African-American, having animus against [Jones] by reason of what he was."  Id. ¶¶ 13, 14.  A plaintiff "must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Fowler, 578 F.3d 210–11.  Her complaint does not contain any facts showing that Jones was discriminated against because of his race or disability.  Therefore, I will dismiss her ADA Title II and Rehabilitation Act claims against the City of Philadelphia.  I will allow leave to amend to the extent she can allege sufficient relevant facts.

### 3.      MHM

MHM argues that plaintiff cannot state a claim against it under Title II of the ADA or the Rehabilitation Act because these statutes do not create liability against private contractors. MHM Mot. to Dismiss, Dkt. No. 13 at p. 5, citing Matthews v. Pa. Dept. of Corrections, 613 F.

App'x 163, 169 (3d Cir. 2015); 42 U.S.C. § 12132 (prohibiting certain forms of discrimination "by any [public] entity").  As plaintiff does not dispute that she cannot state a claim against MHM under Title II, I will dismiss that claim with prejudice.[4]

Plaintiff also agrees she has not yet stated a claim under the Rehabilitation Act, which applies to "any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a). Plaintiff does not allege that MHM receives public assistance, rather stating that it is a "private, independent for profit corporation, contracting with [the City of Philadelphia] to provide medical/health services to inmates at CFCF."  Compl. ¶ 6.  However, she argues that, if given leave to amend, she could add an allegation that MHM receives federal funding and is therefore subject to the Rehabilitation Act.  See Pl.'s Resp. Opp'n MHM Mot. to Dismiss, Dkt. No. 21-1, at p. 6.  I will give plaintiff leave to amend to the extent she can provide allegations that state a claim and for which she has "evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11.[5]

### 4.    PAPP

PAPP is protected by Eleventh Amendment immunity from ADA liability.  Tirpak v. Del. Dept. of Tech. & Info., 648 F. App'x 263, 265 (3d Cir. 2016); Lavia v. Pa. Dept. of Corrs., 224

---

[4] Plaintiff seeks leave to amend to assert a claim under Title III of the ADA, apparently overlooking the fact that she has already asserted a claim under Title III in her complaint. Compl. ¶ 36 (asserting a claim under "Title II and/or Title III of the Americans With Disabilities Act").  As explained above, plaintiff does not have standing to assert a claim under Title III.

[5] Plaintiff argues that "MHM's motion does not contain any affidavits stating that it receives no public funding."  Pl.'s Resp. Opp'n MHM Mot. to Dismiss, Dkt. No. 21-1, at p. 6. At this stage of the proceedings, and absent any allegation by plaintiff that MHM receives federal funding, MHM has no burden to produce such affidavits.

F.3d 190, 206 (3d Cir. 2000).  Therefore, I will dismiss plaintiff's ADA claims against PAPP

with prejudice.

However, § 504 of the Rehabilitation Act "unambiguously expresses Congress' intent to

condition the grant of federal funds on a States' consent to suit through section 200d-7(a)(1)."

Frederick L. v. Dept. of Pub. Welfare, 157 F. Supp. 2d 509, 520–21 (E.D. Pa. 2001).  The Court

of Appeals has expressly held that Pennsylvania's acceptance of Rehabilitation Act funds falls

under an exception to, and therefore waives, Eleventh Amendment immunity.  Koslow v.

Commw. Of Pa., 302 F.3d 161, 172 (3d Cir. 2002).  Plaintiff, however, does not allege any more

facts about PAPP than she does about the City of Philadelphia.  Therefore, for the same reasons

given above regarding the claim against the City of Philadelphia, I will dismiss her

Rehabilitation Act claim against PAPP with leave to amend to the extent she can allege facts

sufficient to state a claim.

### III.    State Law Claims

First, I will dismiss all of plaintiff's state law claims against both the City of Philadelphia

and PAPP.  Plaintiff's claims against the City of Philadelphia for intentional infliction of

emotional distress, false arrest, false imprisonment, malicious prosecution and abuse of process

are barred because they are intentional torts for which a municipality is immune under the

Pennsylvania Tort Claims Act.  42 Pa. Cons. Stat. § 8542.  Plaintiff's claims against the City for

negligence are also barred as none of the exceptions for certain negligent acts listed in 32 Pa.

Cons. Stat. § 8542(b) apply.  Therefore, I will dismiss her tort claims against the City of

Philadelphia with prejudice.

Plaintiff's state law tort claims against PAPP are barred by Eleventh Amendment

immunity.  "[A] claim that state officials violated state law in carrying out their official

responsibilities is a claim against the State that is protected by the Eleventh Amendment." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984). I will therefore also dismiss plaintiff's state law claims against PAPP with prejudice.

With respect to the remaining moving defendants—Browne, Palmer and MHM—I will address the substantive law regarding plaintiff's claims under the Pennsylvania Constitution, negligence, intentional infliction of emotional distress, and the arrest-related claims.

## A. The Pennsylvania Constitution

Defendants move to dismiss plaintiff's claims under Article I of the Pennsylvania Constitution, §§ 1, 8, 9 and 26. No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution. Jones v. City of Phila., 890 A.2d 1188, 1208–15 (Pa. Cmwlth. Ct. 2006). As plaintiff seeks damages, I will dismiss her claims under the Pennsylvania Constitution with prejudice.

## B. Negligent Care and Negligent Infliction of Emotional Distress

### 1. Browne and Palmer

A suit against an officer in her personal capacity is barred under Pennsylvania's Tort Claims Act. 42 Pa. Cons. Stat. § 8541. Pennsylvania allows suits against officers for certain willful conduct, but not for negligent conduct. Id. § 8850. I will therefore dismiss plaintiff's negligence claims against the officers with prejudice.[6]

---

[6] To the extent plaintiff brings any claims against Browne and Palmer in their official capacities, these claims are barred by sovereign immunity. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

### 2. MHM

I will also dismiss plaintiff's claim against MHM for negligent infliction of emotional distress, which she brings only on her own behalf.[7]

Pennsylvania law provides that such a claim arises only when "(1) the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger and reasonably feared impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative." Runner v. Bard, 108 F. Supp. 3d 261, 272 (E.D. Pa. 2015). For the last of these circumstances—which is the only one that could potentially apply in this case—a claimant must contemporaneously observe physical injuries being inflicted on a close family member. Fanelle v. LoJack Corp., 79 F. Supp. 2d 558, 565 (E.D. Pa. 2000); see also Mazzagatti v. Everingham, 516 A.2d 672, 677 (Pa. 1986) (requiring a plaintiff to show that the "shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.")

The complaint in this case belies any showing that plaintiff contemporaneously observed the physical injuries inflicted on Jones as a result of MHM's actions. MHM was responsible for providing medical care to Jones while he was incarcerated. Plaintiff did not observe his alleged mistreatment and overdose. As such, plaintiff cannot plausibly contend that she contemporaneously witnessed any physical or traumatic injury to her son for purposes of maintaining a negligent infliction of emotional distress claim. I will dismiss this claim with prejudice.

---

[7] MHM does not move to dismiss plaintiff's claim for medical malpractice. Plaintiff has complied with the Pennsylvania rule requiring a certificate of merit for medical malpractice claims. Pa. R. Civ. P. 1042.3; see Dkt. No. 7.

**C.      Intentional Infliction of Emotional Distress**

Plaintiff brings claims on behalf of herself and Jones for intentional infliction of emotional distress.  But plaintiff has not alleged conduct of the kind necessary to state such a claim.  I will therefore dismiss these claims with leave to amend.

Under Pennsylvania law, a plaintiff bringing a claim for intentional infliction of emotional distress must show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998), quoting Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987).  "Described another way, it has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort."  Id., quoting Restatement (Second) of Torts § 46, comment d.  Examples of such a claim include fabricating records so that plaintiff was falsely indicted for homicide and knowingly releasing false information to the press that plaintiff was suffering from a fatal disease.  Id. (discussing cases).

Plaintiff's allegations with respect to Browne, Palmer and MHM do not show outrageous conduct.  She provides conclusory allegations that Browne and Palmer falsely searched and arrested Jones, but she does not describe what they said to her that could form the basis of her emotional distress claim.  She also does not provide allegations with respect to MHM that show that Jones's mismanaged medical care at CFCF was intentional, much less malicious or "outrageous."  She therefore fails to allege MHM's employees had the mental state or acted in a way sufficiently atrocious to state a claim for intentional infliction of emotional distress.  I will,

however, grant plaintiff leave to amend to the extent she can allege facts sufficient to state a claim.

### D. False Arrest, False Imprisonment, Malicious Prosecution and Abuse of Process

#### 1. Browne and Palmer

Plaintiff brings claims against Browne and Palmer for false arrest, false imprisonment, malicious prosecution and abuse of process. Compl. ¶ 38. Under Pennsylvania's Tort Claims Act, an officer who has committed "a crime, actual fraud, actual malice, or willful misconduct," is not immune from suit for such acts under Pennsylvania law. 42 Pa. Cons. Stat. § 8550; Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006). I will nonetheless dismiss these claims because plaintiff does not show the factual basis of her claims. She merely asserts that Browne and Palmer "unlawfully searched, unlawfully arrested and unlawfully imprisoned" Jones. Compl. ¶ 13. Plaintiff provides almost no factual allegations about the meeting where Jones was arrested, even though she allegedly spoke with Browne on the phone during this meeting. Id. ¶ 12 (stating that Jones "was seen and handled by Browne and Palmer," that plaintiff told Browne she "was on her way to Browne's office to pick up her son" but "by the time she got there, [Jones] had already been taken away"). Therefore, I will dismiss plaintiff's arrest-related tort claims against Browne and Palmer with leave to amend to the extent she can show the basis for her claims.

#### 2. MHM

MHM moves to dismiss plaintiff's claims against it related to plaintiff's arrest and prosecution, as MHM did not encounter Jones until after his incarceration. Plaintiff does not contest their dismissal. I will therefore dismiss these claims with prejudice.

### E.     Wrongful Death and Survival Acts

Under Pennsylvania's Wrongful Death Act, an individual can bring an action "to recover damages for the death of an individual caused by the wrongful act" of another. 42 Pa. Cons. Stat. § 8301. Under the Survival Act, a cause of action survives the death of the plaintiff. Id. § 8302. "Wrongful death and survival actions are not substantive causes of action; rather, they provide a vehicle through which plaintiffs can recover for unlawful conduct that results in death." Johnson v. City of Phila., 105 F. Supp. 3d 474, 483 (E.D. Pa. 2015).

Plaintiff has stated § 1983 claims against the City of Philadelphia, thereby allowing her wrongful death and survival act claims to proceed. Likewise, MHM has not moved to dismiss her negligence and medical malpractice claims against it, meaning that her wrongful death and survival act claims against these defendants should not be dismissed. But because plaintiff has not stated a claim against Browne, Palmer and PAPP, I will dismiss her wrongful death and survival act claims against them.[8]

An appropriate Order follows.

---

[8] As plaintiff does not contest the dismissal of her claims under the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951 *et seq.*, I will dismiss them as well.