IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE MCDONALD-WITHERSPOON, | : | CIVIL ACTION |
| Individually and as Administratrix of the | : | |
| ESTATE OF KENYADA JONES | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | NO. 17-1914 |

## MEMORANDUM

**Padova, J.**                                                   **August 23, 2018**

This is a civil rights action arising out of the death of Plaintiff Michelle McDonald-Witherspoon's son, Kenyada Jones, while he was being held in custody at the Curran-Fromhold Correctional Facility ("CFCF"). Plaintiff brings claims on behalf of herself and the estate of her son for violations of their civil rights under 42 U.S.C. § 1983, violations of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and violations of state law. Plaintiff asserts these claims against the City of Philadelphia (the "City"), CFCF, and its Warden (the "Warden"), (collectively, the "City Defendants") the Commonwealth of Pennsylvania, the Philadelphia Adult Parole and Probation Department ("PAPP"), two parole officers, Amber Browne and Jeanette Palmer, and two private contractors that serve as healthcare providers for CFCF, Corizon Health, Inc. ("Corizon") and MHM Services, Inc. ("MHM"), as well as unidentified John Doe and Jane Doe employees of Corizon and MHM, respectively. Before the Court are Motions to Dismiss the Amended Complaint filed by the City Defendants, Browne and Palmer, PAPP, Corizon, and MHM and the Jane Doe MHM employees. For the reasons that follow, we grant the Motion to

Dismiss filed by PAPP, deny the Motion filed by Corizon,[1] and grant the remaining Motions in part and deny them in part.

## I.  FACTUAL BACKGROUND

The Amended Complaint alleges the following facts.  On June 28, 2016, Jones, who was being supervised by PAPP in connection with a DUI conviction, met with his parole officer, Browne, and her supervisor, Palmer.  (Am. Compl. ¶ 19.)  Both parole officers were aware that Jones suffered from serious psychiatric conditions.  (Id. ¶ 20.)  Browne and Palmer became aware, during their meeting with Jones, that he "was in a scared and sensitive state of mind." (Id.)  Plaintiff spoke on the phone with both Browne and Palmer during the meeting.  (Id. ¶ 21.) Plaintiff told the parole officers that, because of Jones's state of mind, she was coming to the parole office and would pick Jones up and take him for psychiatric treatment.  (Id.)  Before Plaintiff arrived, however, Browne and Palmer decided to take Jones into custody.  (Id. ¶ 22.) Browne's file notes state that they took Jones into custody for his own safety.  (Id. ¶ 23.)  Jones was incarcerated at CFCF, a prison owned and operated by the City of Philadelphia.  (Id. ¶¶ 5, 22, 26.)  By the time Plaintiff arrived at the meeting, Browne and Palmer had already arrested Jones and taken him to CFCF.  (Id. ¶ 27.)

Jones suffered from paranoid schizophrenia, bipolar disorder, and other psychiatric conditions.  (Id. ¶ 17.)  Almost two weeks before he met with the parole officers, Jones admitted himself to a psychiatric hospital, where he remained for treatment from June 16 until June 22, 2016.  (Id. ¶ 18.)  All Defendants were aware of Jones's recent psychiatric hospitalization and

---

[1] In its Motion to Dismiss, Corizon seeks dismissal of the Amended Complaint in its entirety.  However, it substantively addresses only Plaintiff's § 1983 claim for deliberate indifference to Jones's serious medical needs asserted against it in Count One, and does not address any of Plaintiff's other claims.  Accordingly, we construe Corizon's Motion to seek dismissal of only the § 1983 deliberate indifference claim.

psychiatric condition, as well as his past suicide attempts. (Id.) Jones received no psychiatric care at CFCF and Browne and Palmer did not take sufficient steps to follow-up with CFCF to make sure that Jones received the care he needed. (Id. ¶¶ 29, 32.)

On July 2, 2016, his fifth day at CFCF, Jones was found by a prison guard on the floor of his jail cell, unresponsive and breathing slowly. (Id. ¶ 45.) After medical personnel arrived, he was pronounced dead. (Id.) An autopsy revealed that the cause of death was an excessive intake of Amlodipine, a prescription medication used to control high blood pressure. (Id. ¶¶ 46-47.) At the time of his death, Jones's stomach had a concentration of Amlodipine more than 11 times the maximum therapeutic level. (Id. ¶ 46.) The City, CFCF, Corizon and MHM prescribed the Amlodipine to Jones and gave him "an entire month to three month's worth of the medication Amlodipine to keep on his person (30 to 90 pills at a time)" notwithstanding a note in CFCF's medical records stating "no KOP [keep on person] for Amlodipine." (Id. ¶¶ 44, 47.)

Plaintiff filed the initial Complaint in this action on behalf of herself and the Estate of Kenyada Jones (the "Estate"), in the Philadelphia County Court of Common Pleas on March 23, 2017. The action was removed to this Court on April 26, 2017. Thereafter, all Defendants moved to dismiss the Complaint in whole or in part, with the exceptions of the Warden, who was not yet a party, CFCF, and Corizon, which answered the Complaint and filed cross-claims against MHM. On August 25, 2017, Judge Thomas N. O'Neill granted the Motions to Dismiss in part and denied them in part, and granted Plaintiff leave to amend the Complaint as to some claims and as to some defendants. This action was transferred from Judge O'Neill to Judge John R. Padova on September 11, 2017. Plaintiff thereafter filed the Amended Complaint, which is the subject of the instant Motions to Dismiss.

In Count One of the Amended Complaint, Plaintiff asserts a claim on her own behalf and on behalf of the Estate against Corizon, the John Doe Corizon employees, MHM and the Jane Doe MHM employees for negligence, medical malpractice, and intentional infliction of emotional distress under Pennsylvania common law and for violation of Jones's civil rights pursuant to 42 U.S.C. § 1983.[2]  In Count Two of the Amended Complaint, Plaintiff asserts claims on behalf of herself and on behalf of the Estate against Browne and Palmer for violation of Jones's Fourteenth Amendment rights to Due Process and Equal Protection pursuant to 42 U.S.C. § 1983 and for false arrest, false imprisonment, malicious prosecution, abuse of process and intentional infliction of emotional distress, pursuant to state common law.[3]  In Count Three, Plaintiff asserts claims on behalf of herself and the Estate against the City, CFCF and the Warden for violation of Jones's rights under the Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and for violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794.  In Count Four, Plaintiff asserts a claim on behalf of both herself and the Estate against the Commonwealth of Pennsylvania and PAPP for violation of § 504 of the Rehabilitation Act.  In Count Five, Plaintiff asserts claims under the Pennsylvania Wrongful Death Act, 42 Pa. Cons. Stat. Ann. § 8301 on behalf of herself and the Estate's beneficiaries against all Defendants.  In Count Six, Plaintiff asserts claims under the Pennsylvania Survival Act, 42 Pa. Cons. Stat. Ann. § 8302, on behalf the Estate against all Defendants.  In Count Seven, Plaintiff asserts a claim on her own

---

[2] We understand Count One to assert a claim pursuant to 42 U.S.C. § 1983 for violation of Plaintiff's right to be free from cruel and unusual punishment pursuant to the Eighth and Fourteenth Amendments.

[3] Browne and Palmer have only moved to dismiss Count Two of the Amended Complaint insofar as Plaintiff intended to assert claims against them pursuant to the Pennsylvania Constitution, and have not moved to dismiss Count Two in any other respect.

behalf against all Defendants pursuant to 42 U.S.C. 1983 for deprivation of her liberty interest in the care, custody and maintenance of her son.[4]

## II.    LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  We take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff." DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  Legal conclusions, however, receive no deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "'a short and plain statement of the claim,'" which gives "'the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2) and Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the]

---

[4] We note that the Amended Complaint mentions Title II of the Americans with Disabilities Act ("ADA") in two paragraphs, one of which alleges that Plaintiff may recover attorney's fees and costs under the ADA.  (See Am. Compl. ¶¶ 17, 53.)  However, the Amended Complaint does not specifically assert a claim for violation of the ADA against any Defendant.  Accordingly, we construe the Amended Complaint as not asserting any claims under the ADA.

misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,'" Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556), but it "requires showing 'more than a sheer possibility that a defendant has acted unlawfully.'" Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (quoting Iqbal, 556 U.S. at 678). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## III.    DISCUSSION

### A.    CFCF

The City Defendants seek dismissal of all claims asserted against CFCF in the Amended Complaint, on the ground that CFCF does not have an independent existence separate from the City, and is therefore incapable of being sued in a separate capacity. Philadelphia prisons are departments of the City, and are not separate entities. See Phila., Pa., Home Rule Charter §§ 3-100(f) (LocalLaw Publications 2016) & 5-1200(a) (LocalLaw Publications 2014) (creating the Department of Prisons as a city department and granting it authority to supervise, direct and control all prisons owned and operated by the City); Russell v. City of Philadelphia, 428 F. App'x 174, 177 (3d Cir. 2011) (citations omitted) (noting that a Philadelphia prison and the Philadelphia Prison System are departments of the City). Accordingly, they are not amenable to suit directly, but may only be sued in the name of the City. See 53 Pa. Stat. Ann. § 16257 (stating that "all suits growing out of [any department of the City's] transactions . . . shall be in the name of the city of Philadelphia"); Russell, 428 F. App'x at 177. Because CFCF is a

Philadelphia prison, it is a department of the City and not a proper defendant to this action. Accordingly, we dismiss CFCF as a Defendant in this action.

B.        Section 1983 Medical Care Claims

The City Defendants have moved to dismiss the § 1983 claims asserted against the City and the Warden in Count Three of the Amended Complaint, which alleges that the City, CFCF, and the Warden were deliberately indifferent to Jones's serious medical needs in violation of the Eighth and Fourteenth Amendments.  Corizon, MHM, and the Jane Doe MHM employees have also moved to dismiss the § 1983 claims asserted against them in Count One of the Amended Complaint, which alleges that Corizon, the John Doe Corizon employees, MHM, and the Jane Doe MHM employees were deliberately indifferent to Jones's serious medical needs in violation of the Eighth and Fourteenth Amendments.

A prisoner's right to adequate medical care stems from the Eighth Amendment, which, "through its prohibition on cruel and unusual punishment, prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (quoting Helling v. McKinney, 509 U.S. 25, 32 (1993)).   To set forth a cognizable claim under 42 U.S.C. § 1983 for violation of this right, a plaintiff must allege facts showing that "'the defendants were deliberately indifferent to [his or her] medical needs' and . . . that 'those needs were serious.'"  Id. (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)); see also Estelle v. Gamble, 429 U.S. 97, 104 (1976). The Due Process Clause of the Fourteenth Amendment provides the same right to medical care for pretrial detainees as the Eighth Amendment requires for convicted prisoners.[5]  Colburn v.

_____

[5] We note that the Amended Complaint does not specify whether Jones was a prisoner or a pretrial detainee.  While the Amended Complaint alleges that Jones was taken into custody by

Upper Darby Twp., 838 F.2d 663, 668 (3d Cir. 1988) ("Colburn I") (citations omitted).  In order to state a claim of deliberate indifference to a serious medical need based on a prison official's failure to prevent a prisoner's or pretrial detainee's suicide, a complaint must allege facts that show the following:

> (1) that the individual had a particular vulnerability to suicide, meaning that there was a "strong likelihood, rather than a mere possibility," that a suicide would be attempted; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability.

Palakovic v. Wetzel, 854 F.3d 209, 223-24 (3d Cir. 2017) (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1024 (3d Cir. 1991) ("Colburn II")).

### 1.    The § 1983 Claim Asserted Against the City in Count Three

The City Defendants asks us to dismiss the § 1983 claim asserted against the City in Count Three on the ground that the Amended Complaint fails to state a claim for municipal liability under Monell v. New York City Department of Social Services, 436 U.S. 658 (1978).  The City previously moved to dismiss Plaintiff's claim brought pursuant to § 1983 that the City was deliberately indifferent to Jones's serious medical needs in its Motion to Dismiss the original Complaint.  Judge O'Neill denied the City's Motion to Dismiss the original Complaint as to this claim, concluding that the claim that the City was deliberately indifferent to Jones's serious medical needs satisfied the requirements of Monell.  See McDonald-Witherspoon v. City of Phila., Civ. A. No. 17-1914, 2017 WL 3675408, at *4 (E.D. Pa. Aug. 25, 2017).  The City Defendants now argue that Judge O'Neill failed to address certain deficiencies in this claim that remain deficient in the Amended Complaint.  However, Judge O'Neill's decision denying the

---

the parole officers, it does not allege that he was arrested for a parole violation or in connection with any other criminal charge.

City's previous Motion to Dismiss with respect to this claim is the law of this case and we may not revisit it.

"The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Farina v. Nokia Inc., 625 F.3d 97, 117 n.21 (3d Cir. 2010) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)).  This doctrine applies to both reconsideration of a judge's own rulings and to review of a predecessor's rulings in the same case.  See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988) (stating that the law of the case doctrine "applies as much to the decisions of a coordinate court in the same case as to a court's own decisions" (citation omitted)).  "'The [law of the case] doctrine does not restrict a court's power but rather governs its exercise of discretion.'"  Feesers, Inc. v. Michael Foods, Inc., 591 F.3d 191, 207 (3d Cir. 2010) (quoting Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, 123 F.3d 111, 116 (3d Cir. 1997)).  The doctrine requires us to decline to revisit prior decisions in the cases before us "'in the absence of extraordinary circumstances.'"  Id. (quoting Christianson, 486 U.S. at 816).  Such circumstances are generally limited to "'situations in which: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice.'"  Schneyder v. Smith, 653 F.3d 313, 331-32 (3d Cir. 2011) (quoting Pub. Interest Research Grp., 123 F.3d at 116).

The City Defendants do not contend that extraordinary circumstances exist that would justify revisiting Judge O'Neill's ruling.  They merely argue that Plaintiff's § 1983 deliberate indifference claim in the initial Compliant failed to sufficiently allege certain necessary elements of a § 1983 claim brought against a municipality pursuant to Monell, that Judge O'Neill did not address this deficiency, and that the Amended Complaint suffers from the same deficiency.

However, simple legal error, without more, is not an extraordinary circumstance that would enable us to exercise our discretion to revisit Judge O'Neill's decision. Schneyder, 653 F.3d at 331-32. Thus, we conclude that Judge O'Neill's ruling denying the City's initial Motion to Dismiss Plaintiff's § 1983 claim based on the City's deliberate indifference to Jones's serious medical needs represents the law of this case, which we cannot revisit. Accordingly, we deny the City Defendants' Motion insofar as it seeks to dismiss the § 1983 claim asserted against the City in Count Three of the Amended Complaint.

2. The § 1983 Claims Asserted Against the Warden in Count Three

Count Three of the Amended Complaint asserts § 1983 claims against the Warden in his official and individual capacities. (Am. Compl. ¶ 6.) The City Defendants seek to dismiss both the official and individual capacity claims asserted against the Warden. A § 1983 suit against a government official in his or her official capacity is equivalent to, and duplicative of, a suit against the governmental entity, because it "'represent[s] only another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (quoting Monell, 436 U.S. at 690, n.55). Official-capacity suits are therefore, "in all respects other than name, to be treated as a suit against the entity." Id. at 166 (citing Brandon v. Holt, 469 U.S. 464, 471-72 (1985)).

The City Defendants argue that we should dismiss Count Three as against the Warden in his official capacity because it is identical to the § 1983 claim made against the City. We agree. It is unnecessary for Plaintiff to pursue the same claim against the same party in interest under a different name. Accordingly, we grant the City Defendants' Motion to Dismiss insofar as it seeks dismissal of the § 1983 claim asserted against the Warden in his official capacity in Count Three of the Amended Complaint.

Suits against municipal officials in their individual capacities, unlike official capacity claims, seek to hold the officials personally liable for their own actions. Graham, 473 U.S. at 165 (citation omitted). In general, "to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Id. at 166 (citing Monroe v. Pape, 365 U.S. 167 (1961)). Additional complications arise, however, when a plaintiff seeks to hold a supervisory official liable for deprivations that result from the action or inaction of a subordinate. Supervisory officials may not be held vicariously liable for the unconstitutional acts of their subordinates and "are liable only for their own unconstitutional conduct." Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014) (citing Bistrian v. Levi, 696 F.3d 352, 366 (3d Cir. 2012), rev'd on other grounds sub nom., Taylor v. Barkes, 135 S. Ct. 2042 (2015)).

There are two ways a supervisor may be held personally liable under § 1983. Id. A supervisor may be liable if he or she, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Id. (alteration in original) (quotation omitted). A supervisor may also be liable if he or she "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." Id. (internal quotation omitted). To state a claim under the first method, i.e., that a supervisor is liable under § 1983 for establishing and maintaining an unconstitutional policy or practice,

> the plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional

> injury was caused by the failure to implement the supervisory
> practice or procedure.

Id. at 317 (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989); and Brown v.

Muhlenberg Twp., 269 F.3d 205 (3d Cir. 2001)).  A plaintiff needs to do more than merely assert

that the "injury would not have occurred if the supervisor had done more than he or she did," and

must "identify specific acts or omissions of the supervisor" that show deliberate indifference and

suggest a relationship between the "identified deficiency" of a policy or practice and the injury

suffered.  Brown, 269 F.3d at 216 (quotation omitted).

The City Defendants seek dismissal of the individual capacity claim asserted against the

Warden in Count Three on the ground that the Amended Complaint does not include any specific

allegations of his personal involvement in the violation of Jones's rights under the Eighth and

Fourteenth Amendments.  However, the City Defendants do not address the alternate theory of

supervisor liability, namely, that a supervisor may be held liable for establishing an

unconstitutional policy, practice or custom with deliberate indifference to the consequences

thereof.  The Amended Complaint alleges that the Warden failed to adopt a number of

supervisory policies, including that he

> failed to set up a proper and reasonable system for handling
> [inmates with psychiatric disabilities], failed to set up proper
> housing where extra psychiatric care and monitoring could be
> given, failed to set up a system where proper therapy could be
> given, [and] failed to set up a system where the special medication
> issues of schizophrenics could be addressed . . . .

(Am Compl. ¶ 72.)  In place of such measures, the Amended Complaint alleges that the

procedures in place "creat[ed] an unwritten policy and custom at CFCF of neglecting and

abusing [Defendants'] inmates and especially [Defendants'] inmate [sic] with psychiatric

conditions like [Jones]."  (Id. ¶ 50.)  It further alleges that the Warden was aware of and

indifferent to this policy, stating that the Warden "covered up reports of problems and failed to

take disciplinary action against those employees mishandling these types of inmates" and "looked the other way when reports of abuse and neglect of suicidal and schizophrenic inmates were made." (Id. ¶ 71.) The Amended Complaint also alleges that the "omissions by defendants," which include the failure to adopt the policies set out in paragraph 72 of the Amended Complaint, "proximately caused . . . [Jones's] severe mental and physical pain and suffering and death." (Id. ¶ 73.)

We conclude that the Amended Complaint contains sufficient factual allegations to assert that the Warden permitted the creation of an unconstitutional practice of neglecting psychiatrically disabled inmates, with deliberate indifference to the risks created by that practice. Accordingly, we conclude that the Amended Complaint states a claim for supervisory liability against the Warden in his individual capacity, and deny the City Defendants' Motion to Dismiss insofar as it seeks dismissal of the § 1983 claim for deliberate indifference to Jones's serious medical needs asserted against the Warden in his individual capacity in Count Three of the Amended Complaint.

### 3. Corizon and MHM

Corizon and MHM both move to dismiss the § 1983 claims asserted against them in Count One of the Amended Complaint, on separate grounds. Corizon argues that the Amended Complaint fails to allege sufficient facts to state a § 1983 claim against it for violation of Jones's Eighth and Fourteenth Amendment rights on the ground that it does not allege a facially plausible claim that Corizon was deliberately indifferent to the risk that Jones would commit suicide.[6] MHM argues that the Amended Complaint fails to allege sufficient facts to state a §

---

[6] Corizon argues that the appropriate standard is reckless, rather than deliberate, indifference. It relies on the United States Court of Appeals for the Third Circuit's decision in Palakovic v. Wetzel, 854 F.3d at 222, for the proposition that prison suicide claims require a

1983 claim against it for deliberate indifference to Jones's serious medical needs, on the ground that it fails to identify any specific policy, practice or custom that led to a violation of Jones's constitutional rights as required by Monell.  We address each argument in turn.

Corizon argues that the Amended Complaint fails to allege facts sufficient to establish that it acted with deliberate indifference.  The Amended Complaint alleges that prison medical records indicated that Jones "had a history of suicide attempts including attempt at suicide by swallowing an overdose of pills" and that he required "immediate psychiatric evaluations, psychiatric medications and psychiatric monitoring."  (Am. Compl. ¶ 38.)  It further alleges that "Corizon and . . . [its] employees were in charge of providing [the medical and psychiatric] care [Jones required] or . . . referring [Jones] to medical and psychiatric providers who could provide such care."  (Id. ¶ 40.)  It also alleges that members of the staff of CFCF, which included Corizon and its employees, were aware of Jones's medical needs and history of suicide attempts, and were aware pursuant to "their own instructions" that Jones was not to be given Amlodipine to keep on his person, but nonetheless gave him a full bottle of potentially lethal medication and placed him alone in a cell without monitoring.  (Id. ¶¶ 37-38.)  We conclude that these allegations are sufficient to allege a facially plausible claim that Corizon acted with deliberate indifference to Jones's serious medical needs.  We therefore deny Corizon's Motion to Dismiss the § 1983 claim for deliberate indifference to Jones's serious medical needs asserted in Count One of the Amended Complaint.

---

"much more stringent burden," namely, that a defendant acted with reckless, as opposed to deliberate, indifference to an inmate's vulnerability to suicide.  (Corizon Mem. (Docket No. 43) at 5.)  However, the Palakovic Court made clear that a plaintiff need only show that a defendant "acted with reckless *or deliberate* indifference, meaning something beyond mere negligence," and explicitly declined "to parse these phrases to determine whether there is some distinction between them."  Palakovic, 854 F.3d at 224 and 224 n.15 (emphasis added).  Accordingly, we decline to impose a heightened burden on Plaintiff's § 1983 medical care claim, and analyze it under the deliberate indifference standard.

MHM seeks dismissal of the § 1983 claim for deliberate indifference to serious medical needs asserted in Count One on the ground that it does not adequately identify any specific policy, practice or custom that resulted in a violation of Jones's constitutional rights. A private company acting under color of state law, like a municipality, can only be liable under § 1983 if it had a policy, practice or custom that resulted in the violation of constitutional rights. See Palakovic, 854 F.3d at 232 ("To state a claim against a private corporation providing medical services under contract with a state prison system, a plaintiff must allege a policy or custom that resulted in the alleged constitutional violations at issue." (citing Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003))). "'There are three situations where acts of a[n] . . . employee may be deemed to be the result of a policy or custom of the . . . entity for whom the employee works, thereby rendering the entity liable under § 1983.'" Robinson v. Fair Acres Geriatric Ctr., 722 F. App'x 194, 198 (3d Cir. 2018) (quoting Natale, 318 F.3d at 584)). In the first situation, the employee's act implements a policy or custom promulgated by the entity. Id. (citation omitted). In the second situation, the entity has not implemented a specific policy, "but federal law has been violated by an act of the policymaker itself." Id. (citation omitted). In the third situation, "'the policymaker has failed to act affirmatively at all'" in spite of the fact that "'the need to take some action to control [the entity's] agents . . . is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights'" that the failure to act "'can reasonably be said'" to amount to deliberate indifference by the policymaking entity. Id. (quoting Natale, 318 F.3d at 584).

MHM argues that the Amended Complaint does not state a facially plausible § 1983 claim against it because it "does not contain any allegation . . . related to MHM's implementation or development of policies or procedures." (MHM Mem. (Docket No. 44) at 7.) The Amended

Complaint alleges that MHM and its employees shared responsibility for either "providing [medical and psychiatric] care [to Jones] or [for] referring [Jones] to medical and psychiatric providers who could provide such care." (Am. Compl. ¶ 40.) It further alleges that, in spite of that responsibility, there was "a pattern of neglect of medical needs at CFCF" that was in part "due to the overcrowding . . . at CFCF" which was illustrated by the failure of MHM's employees "to follow their own instructions" by giving an entire bottle of potentially lethal medication to Jones, despite the notation in his medical records that the medicine was not to be given to Jones to "keep on his person" in light of his known psychiatric history. (Id. ¶ 37.) It also alleges that MHM "fail[ed] to train, oversee and supervise [its] employees, and fail[ed] to take corrective action for [its] employees [sic] misdeeds, thus creating an unwritten policy and custom at CFCF of neglecting and abusing . . . inmates and especially . . . inmate [sic] with psychiatric conditions like [Jones]." (Id. ¶ 50.) We conclude that these factual allegations, considered in the light most favorable to Plaintiff, give rise to the plausible inference that the "need to take some action to control" its employees was "obvious" to MHM, such that "the inadequacy of [MHM's] existing practice [was] so likely to result in the violation of constitutional rights, that [MHM] can reasonably said to have been deliberately indifferent to the need." Robinson, 722 F. App'x at 198 (quotation omitted). Accordingly, we conclude that the Amended Complaint sufficiently alleges that MHM had "a policy or custom that resulted in the alleged constitutional violations at issue" to state a facially plausible §1983 claim against MHM. Palakovic, 854 F.3d at 232 (citing Natale, 318 F.3d at 583-84). We therefore deny MHM's Motion to Dismiss the § 1983 claim for deliberate indifference to Jones's serious medical needs asserted against it in Count One of the Amended Complaint.

In its Motion to Dismiss, MHM also seeks to dismiss Plaintiff's claims for punitive damages, arguing that punitive damages are only available when a party has acted with more culpability than gross negligence. However, MHM only argues that the Amended Complaint fails to allege such culpability because of "the inadequacy of Plaintiff's Section 1983 allegations against MHM." (MHM Mem. at 8.) Because we conclude that these allegations are not inadequate, we further deny MHM's Motion to Dismiss with respect to the Amended Complaint's request for punitive damages.

C.     Section 1983 Substantive Due Process Claims

In Count Seven of the Amended Complaint, Plaintiff asserts § 1983 claims against all Defendants on her own behalf for violation of her substantive due process rights. Specifically, Plaintiff asserts claims for deprivation of her "liberty interest in the care, custody and maintenance of her family and son" due to the death of her son. (Am. Compl. ¶ 88.) All Defendants except Corizon move to dismiss these claims. The Due Process Clause protects a parent's liberty interest in "mak[ing] critical child-rearing decisions concerning the care, custody, and control of minors." McCurdy v. Dodd, 352 F.3d 820, 829 (3d Cir. 2003) (citing Troxel v. Granville, 530 U.S. 57, 66 (2000)). These due process protections are, however, limited in two ways. First, the parent's liberty interest "must cease to exist at the point at which a child begins to assume that critical decisionmaking responsibility for himself or herself." Id. Second, "the Due Process Clause only protects against deliberate violations of a parent's fundamental rights[,]" i.e., "where the state action at issue was specifically aimed at interfering with protected aspects of the parent-child relationship." Id. at 827-28 (citation omitted).

The City Defendants, Browne, Palmer, and MHM argue that Count Seven fails to state a claim upon which relief can be granted because it fails to allege that Jones was so disabled as to

be completely dependent upon Plaintiff such that she had a continued liberty interest in his care, and because it fails to allege that any of Defendants' actions were specifically aimed at interfering with Plaintiff's parental relationship with Jones.[7]

The Amended Complaint alleges that Jones was born on September 21, 1970, and died on July 2, 2016, making him 45 years old at the time of his death. (Am. Compl. ¶ 3.) It also alleges that "[a]t all relevant times, [Jones] was totally dependent on Plaintiff for his financial and emotional needs, and for his housing and daily living." (Id. ¶ 89.) However, it also alleges that Jones had "admitted himself to a psychiatric hospital" on June 16, 2016. (Id. ¶ 18.) The Amended Complaint also indicates that Jones drove himself to his June 28, 2016 meeting with his parole officers. (See id. ¶¶ 19, 23.) Plaintiff argues that Jones was not independent because of his psychiatric issues, and that she consequently had a continued parental liberty interest in his care despite his age. However, beyond the conclusory allegation in paragraph 89 that Jones was "totally dependent on Plaintiff," the Amended Complaint does not allege any facts that demonstrate that Plaintiff continued to make critical decisions concerning Jones's care after he became an adult. In fact, the allegation that Jones chose to admit himself for psychiatric care in the days before his death indicates that Jones had "assume[d] . . . critical decisionmaking responsibility for himself" and thereby terminated Plaintiff's protected liberty interest in his care. McCurdy, 352 F.3d at 829.

---

[7] Defendant PAPP also seeks dismissal of Plaintiff's § 1983 claim for violation of her substantive due process rights on the ground that it is immune from such a claim under the Eleventh Amendment and because it is not a "person" subject to suit under § 1983. Judge O'Neill dismissed all of the § 1983 claims asserted against PAPP in the original Complaint, including those based on violations of Plaintiff's own constitutional rights, because PAPP is immune from such claims pursuant to the Eleventh Amendment, and he denied Plaintiff leave to amend such claims. McDonald-Witherspoon, 2017 WL 3675408, at *7. Accordingly, Plaintiff cannot properly reassert her substantive due process claim against PAPP in her Amended Complaint, and we therefore dismiss Count Seven as against PAPP.

Moreover, even if the Amended Complaint sufficiently alleged that Plaintiff continued to make critical decisions regarding Jones's care prior to his death, it does not allege that any of Defendants' actions were intended to interfere with her parental relationship with her son. Even the allegations that Browne and Palmer took Jones into custody despite knowing that Plaintiff was on her way to get him are insufficient to establish that Browne and Palmer intended to interfere with Plaintiff's relationship with her son, because the Amended Complaint alleges that Browne and Palmer were motivated by a concern for Jones's safety, rather than an intent to interfere with Plaintiff's relationship with him. (See Am. Compl. ¶ 23.) Because the Amended Complaint does not allege facts that would establish that Plaintiff either had a continuing interest in her son's care and maintenance or that Defendants' conduct was intended to interfere with Plaintiff's parental relationship with Jones, we conclude that the Amended Complaint fails to state a claim upon which relief could be granted with regard to Count Seven. Accordingly, we grant Defendants' Motions to Dismiss insofar as they seek dismissal of Count Seven of the Amended Complaint with prejudice, as we conclude that further amendment of this claim would be futile.[8] See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (citation omitted.)

D.    The Rehabilitation Act

Count Three of the Amended Complaint asserts that the City and the Warden discriminated against Jones on the basis of his psychiatric disability in violation of § 504 of the Rehabilitation Act. Count Four of the Amended Complaint asserts a claim for violation of § 504 of the Rehabilitation Act against the Commonwealth and PAPP. Section 504 of the

---

[8] We conclude that amendment would be futile with regard to this claim because Judge O'Neill, in dismissing this claim in his August 25, 2017 opinion, identified Plaintiff's failure to allege that Jones was incapable of making critical decisions for himself and her failure to allege that any state action was aimed at interfering with her relationship with Jones as the basis for his dismissal of the claim. See McDonald-Witherspoon, 2017 WL 3675408, at *8. That admonition notwithstanding, however, Plaintiff did not cure this infirmity in the Amended Complaint.

Rehabilitation Act, 29 U.S.C. § 794, prohibits discrimination against a disabled person based solely on his or her disability in any programs that receive federal financial assistance. Kortyna v. Lafayette Coll., 47 F. Supp. 3d 225, 238 (E.D. Pa. 2014) (quoting Freed v. Consol. Rail Corp., 201 F.3d 188, 190 (3d Cir. 2000)). Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). In order to state a claim under § 504, a plaintiff must show that "'(1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.'" Defreitas v. Montgomery Cty. Corr. Facility, 525 F. App'x 170, 178 (3d Cir. 2013) (quoting Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 553 n.32 (3d Cir. 2007)). In addition, the plaintiff "must show that the allegedly discriminating entity receives federal funding." C.G. v. Pa. Dep't of Educ., 734 F.3d 229, 235 n.10 (3d Cir. 2013) (citation omitted). In the prison context, a complaint may allege a facially plausible Rehabilitation Act claim by alleging facts that would show that the plaintiff was denied a reasonable accommodation that would have given "a disabled prisoner 'meaningful access' to the prison program in question." Defreitas, 525 F. App'x at 178 n.14 (quoting Alexander v. Choate, 469 U.S. 287, 301 (1985)).

       1.     The City

The City Defendants seek dismissal of that portion of Count Three that asserts a Rehabilitation Act claim against the City, on the ground that the allegations in the Amended Complaint are insufficient to state a facially plausible claim for violation of the Rehabilitation

Act because they are conclusory and fail to allege any specific acts of discrimination by the City or that the City denied Jones the benefits of any specific programs or services based on his disability. Plaintiff maintains, however, that she is proceeding on a failure to accommodate theory of Rehabilitation Act liability; specifically, that the City failed to accommodate Jones as an inmate with psychiatric issues who was at a high risk of suicide by failing to take suicide prevention precautions such as providing secure housing and thorough monitoring. Plaintiff contends that the Amended Complaint's allegations that the City failed to provide reasonable accommodations for Jones' psychiatric disability are sufficient to state a claim for discrimination on the basis of a disability in violation of § 504 of the Rehabilitation Act.

Section 504 of the Rehabilitation Act imposes a duty on federally funded programs to make reasonable accommodations to ensure meaningful access to those programs for otherwise qualified individuals with disabilities. Berardelli v. Allied Servs. Inst. of Rehab. Med., No. 17-1469, 2018 WL 3849363, at *5 (3d Cir. Aug. 14, 2018) (quoting Choate, 469 U.S. at 300-01) (additional citation omitted). In the prison context, courts in this circuit have found that subjecting a disabled inmate to standard disciplinary procedures for actions that are manifestations of his or her disability amounts to a failure to accommodate the inmate's disability. See Parms v. Pa. Dep't of Corrs., Civ. A. No. 14-84, 2015 WL 1326323, at *3 (W.D. Pa. Mar. 25, 2015) (concluding that complaint alleging that plaintiff was disciplined for failure "to move for meals or stand for count on time" when his failures were due to his deafness stated a facially plausible claim for discrimination on the basis of plaintiff's disability in violation of Title II of the ADA); Snider v. Motter, Civ. A. No. 13-1226, 2016 WL 4154927, at *8 (M.D. Pa. June 2, 2016), *report and recommendation adopted*, Civ. A. No. 13-1226, 2016 WL 4140728 (M.D. Pa. Aug. 4, 2016) (recommending that complaint alleging that prison failed to

accommodate plaintiff's mental illness when it disciplined him for actions that "were manifestations of his mental illness" and "punish[ed] him in the same way other non-mentally ill inmates would have been punished" stated a claim for discrimination in violation of Title II of the ADA).[9]   Another district court, outside of this circuit, has held that a prison's failure to implement suicide-prevention measures can support a claim for failure to reasonably accommodate an inmate's mental illness-based disability.  White v. Watson, Civ. A. No. 16-560, 2016 WL 6277601, at *6 (S.D. Ill. Oct. 27, 2016) ("The plaintiff has adequately pled that [the prison] deprived [the inmate] of a safe cell, presumably with the consequence that he was unable to participate in some future service, program or activity offered by the Jail because he died.").

The Amended Complaint alleges the following.  Prison medical records indicated that Jones "had a history of suicide attempts including attempt at suicide by swallowing an overdose of pills" and that he required "immediate psychiatric evaluations, psychiatric medications and psychiatric monitoring."  (Am. Compl. ¶ 38.)  Jones was taken into custody because Parole Officers Browne and Palmer determined that "'he was not stable'" and consequently "'for his own safety he was taken into custody [because] he could not be left on the street.'"  (Id. ¶ 23; see also id. ¶¶ 19-25.)  As a result, when Jones entered CFCF, he was in need of "substantial medical and psychiatric care, including . . . hospitalization, . . . psychiatric and psychotropic medications, evaluation by medical and psychiatric professionals, counseling and therapy, [and] housing in special units set up for close monitoring to prevent harm . . . ."  (Id. ¶ 40.)  Moreover, despite its knowledge of Jones's history and disability, the City "fail[ed] to give [Jones] his medication,

_____

[9] Although these cases were brought under the ADA, they are instructive in this action because "the substantive standards for determining liability under § 504 of the [Rehabilitation Act] are equivalent to the ADA and claims under both provisions are interpreted consistently." Hollinger v. Reading Health Sys., Civ. A. No. 15-5249, 2016 WL 3762987, at *12 (E.D. Pa. July 14, 2016) (quotation and additional citation omitted).

fail[ed] to place him in a jail cell that was appropriate for his mental state, fail[ed] to give him needed psychiatric and medical treatment" and instead gave him an entire bottle of the blood pressure medication on which he overdosed. (Id. ¶ 44.) We find that these factual allegations state a facially plausible claim for violation of § 504 of the Rehabilitation Act based on the City's failure to accommodate Jones's mental illness by implementing suicide-prevention procedures, thus precluding him from participating in future prison services and progams because of his disability. Accordingly, we deny the City's Motion to Dismiss with respect to the Rehabilitation Act claim asserted against it in Count Three of the Amended Complaint.

2.   Warden

The City Defendants also move to dismiss the Rehabilitation Act claim asserted against the Warden in Count Three, on the ground that he is not personally subject to suit under the Rehabilitation Act. The United States Court of Appeals for the Third Circuit has held that "[s]uits may be brought pursuant to Section 504 [of the Rehabilitation Act] against recipients of federal financial assistance, but not against individuals." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 804 (3d Cir. 2007) (citing Emerson v. Thiel Coll., 296 F.3d 184, 190 (3d Cir. 2002)); see also Emerson, 296 F.3d at 190 (explaining that individual defendants, unlike the college for which they worked, did not receive federal aid, and were therefore not subject to suit under the Rehabilitation Act). Consequently, even though the Amended Complaint alleges that the Warden "received federal funding" (Am. Compl. ¶ 70), this allegation is insufficient to support the Rehabilitation Act claim against him because individuals are not amenable to suit under the Act. A.W., 486 F.3d at 804. Accordingly, we grant the City Defendants' Motion to Dismiss the

Rehabilitation Act claim asserted against the Warden in Count Three of the Amended Complaint with prejudice.[10]

        3.        <u>MHM</u>

Defendant MHM also seeks to dismiss Plaintiff's claim against it under § 504 of the Rehabilitation Act. While such a claim is not clearly set forth in the Amended Complaint, Plaintiff maintains, in her response to MHM's Motion to Dismiss, that she intended to assert a claim against MHM for violation of the Rehabilitation Act. (<u>See</u> Pl.'s Resp. to MHM's Mot. Dismiss Am. Compl. (Docket No. 47) at 6-7.) Consequently, we construe the Amended Complaint as including such a claim against MHM, and we examine the sufficiency of that claim on the merits.

MHM argues that any claim asserted against it pursuant to § 504 of the Rehabilitation Act should be dismissed for failure to state a facially plausible claim for discrimination in violation of the Rehabilitation Act on the sole ground that the Amended Complaint does not sufficiently allege that it receives federal funds. The Amended Complaint alleges that MHM "at all relevant times received, and currently receive[s] substantial federal funding, making [it] subject to § 504 of the Rehabilitation Act of 1973." (Am. Compl. ¶ 52.) At this early stage of the litigation, where Plaintiff has not had the benefit of discovery, we conclude that this allegation is sufficient to establish the federal funding element of a Rehabilitation Act claim. Accordingly, we deny MHM's Motion to Dismiss insofar as it seeks dismissal of the § 504 claim asserted against it.

---

[10] Because the Amended Complaint alleges that the Warden is an individual, we conclude that any further amendment of this claim would be futile. <u>See</u> <u>Alston</u>, 363 F.3d at 235.

4. PAPP

PAPP seeks dismissal of Count Four of the Amended Complaint, which asserts a Rehabilitation Act claim against it based on actions taken by its employees, Browne and Palmer. PAPP argues that the Amended Complaint fails to state a claim against it upon which relief can be granted because it fails to allege that Jones was discriminated against *solely* on the basis of his disability, as is required to state a claim for relief under the Rehabilitation Act. The Rehabilitation Act allows plaintiffs to recover only if they "were deprived of an opportunity to participate in a program *solely* on the basis of disability." C.G., 734 F.3d at 235-36 (emphasis added). Consequently, "an alternative cause is fatal to [a Rehabilitation Act] claim because disability would no longer be the sole cause." Id. at 236 n.11 (citing Menkowitz v. Pottstown Mem'l Med. Ctr., 154 F.3d 113, 125 (3d Cir. 1998)).

Here, the Amended Complaint alleges that "Browne and Palmer's sole reason for arresting and imprisoning [Jones] on 6/28/16 was the fact that he had a psychiatric disability," that "[t]hey treated him differently than other parolees due to his disability," and that "[t]hey imprisoned him for being psychiatrically disabled . . . ." (Am. Compl. ¶ 26.) It further alleges that "Browne and Palmer had no legitimate law and order or parole purpose for imprisoning [Jones]; it did not further the interests of [Jones] or society." (Id. ¶ 33.) However, the Amended Complaint also includes a quotation from file notes it alleges were written by Browne, in which Browne stated that Jones "was taken into custody in the office for his own safety" because Officer Browne "felt he was not stable and that he needed to go back to the hospital to have his meds regulated," however "the wait [for Plaintiff to come to transport Jones] was to [sic] long and the car that they were supposed to take was in no condition for anyone to drive" and,

consequently, "for his own safety [Jones] was taken into custody [because] he could not be left on the street." (Id. ¶ 23.)

We conclude, accordingly, that the Amended Complaint fails to allege that PAPP discriminated against Jones *solely* on the basis of his disability. The Amended Complaint's allegations regarding Browne's notes demonstrate that Browne's and Palmer's actions were motivated by concern for Jones's safety, in addition to the fact that he was psychiatrically disabled, and therefore establish dual causes for their actions. See C.G., 734 F.3d at 236 n.11 (citation omitted). Accordingly, we further conclude that, because the Amended Complaint does not allege that PAPP discriminated against Jones solely on the basis of his disability, it fails to state a claim under § 504 of the Rehabilitation Act. Therefore, we grant PAPP's Motion to Dismiss Count Four of the Amended Complaint. As the Amended Complaint contains specific factual allegations that would establish that Browne and Palmer had dual motivations for taking Jones into custody, we also conclude that any further amendment of these claims would be futile. Accordingly, we dismiss Count Four of the Amended Complaint with prejudice. See Alston, 363 F.3d at 235.

E.    State Law Claims

The Amended Complaint also asserts a number of claims under Pennsylvania law against certain Defendants. Only some of these claims are at issue in the instant motions.[11] Specifically,

---

[11] Defendants have not moved to dismiss the following state law claims: claims for intentional infliction of emotional distress, negligence, and medical malpractice asserted against Corizon in Count One of the Amended Complaint; claims for negligence and medical malpractice in asserted against MHM in Count One of the Amended Complaint; claims for intentional infliction of emotional distress, false arrest, false imprisonment, malicious prosecution, and abuse of process asserted against Browne and Palmer in Count Two of the Amended Complaint; and claims under the Pennsylvania Wrongful Death and Survival Acts, 42 Pa. Cons. Stat. Ann. §§ 8301, 8302, asserted against MHM, Corizon, Browne and Palmer in Counts Five and Six of the Amended Complaint.

MHM seeks dismissal of Plaintiff's claim for intentional infliction of emotional distress in Count One of the Amended Complaint,[12] and the City Defendants and PAPP seek dismissal of Plaintiff's wrongful death and survival action claims in Counts Five and Six of the Amended Complaint.[13]

### 1. Intentional Infliction of Emotional Distress

Count One of the Amended Complaint asserts a claim for intentional infliction of emotional distress against both MHM and Corizon (and their respective employees). MHM asks us to dismiss this claim, while Corizon does not. In order to state a claim for intentional infliction of emotional distress for which relief can be granted under Pennsylvania law, a complaint must allege facts that "'demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff.'" Reedy v. Evanson, 615 F.3d 197, 231 (3d Cir. 2010) (quoting Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)). A defendant's conduct "'must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998) (quoting Buczek v. First

---

[12] Although MHM states in its Motion to Dismiss that it seeks dismissal of the Amended Complaint in its entirety, it does not make any arguments with respect to Plaintiff's state law claims for negligence and medical malpractice asserted in Count One of the Amended Complaint. It also does not make any arguments with respect to the wrongful death and survival actions asserted against it in Counts Five and Six of the Amended Complaint. Consequently, with respect to the state law causes of action, we construe MHM's Motion to only seek dismissal of the claim for intentional infliction of emotional distress asserted against it in Count One.

[13] Browne and Palmer also move to dismiss any claims Plaintiff intends to assert against them under the Pennsylvania Constitution because the Amended Complaint states, in Count Two, that Browne's and Palmer's acts and omissions constitute violations of the Pennsylvania Constitution. Plaintiff concedes in her response that she "does not intend to assert a separate cause of action under the Pennsylvania Constitution." (Pl.'s Resp. to Amber Browne's & Jeanette Palmer's Partial Mot. Dismiss Am. Compl. (Docket No. 45) at 1.) Accordingly, the Motion to Dismiss filed by Browne and Palmer is dismissed as moot insofar as it seeks dismissal of any cause of action brought under the Pennsylvania Constitution.

Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)). Thus, it is not sufficient to allege merely "'that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.'" Id. (quoting Restatement (Second) of Torts § 46, comment d) (additional citation omitted).

MHM argues that the Amended Complaint fails to allege sufficient facts to show the outrageous or extreme conduct required to state a claim for intentional infliction of emotional distress. The Amended Complaint alleges that, when Jones entered CFCF, he was in need of "substantial medical and psychiatric care, including . . . hospitalization, . . . psychiatric and psychotropic medications, evaluation by medical and psychiatric professionals, counseling and therapy, [and] housing in special units set up for close monitoring to prevent harm . . . ." (Id. ¶ 40.) It further alleges that MHM and its employees knew of Jones's condition and psychiatric needs and "were in charge of providing [the] care" Jones required. (Id. ¶¶ 38, 40.) In spite of their knowledge of Jones's needs, however, the Amended Complaint alleges that MHM and its employees did not refer Jones to psychiatric or medical care providers, and instead "failed to follow their own instructions" by giving Jones a full bottle of potentially lethal medication that he was not to be allowed to "keep on [his] person," and failed to monitor him thereafter. (Id. ¶¶ 37, 40.) "[C]onstru[ing] the complaint in the light most favorable to the plaintiff," DelRio-Mocci, 672 F.3d at 245, and reading these allegations together, the Amended Complaint plausibly alleges that MHM intentionally abdicated its responsibilities for Jones's psychiatric care, disregarded its own warnings concerning medication that posed a danger to suicidal inmates, and willfully gave Jones a lethal amount of medication, with full knowledge of the

danger it posed to him. At this early stage of the litigation we conclude that these allegations plausibly demonstrate that MHM engaged in extreme or outrageous conduct. See Reedy, 615 F.3d at 231. We therefore deny MHM's Motion to Dismiss insofar as it seeks dismissal of the claim for intentional infliction of emotional distress asserted against it in Count One of the Amended Complaint.

## 2. Wrongful Death and Survival Actions

The City Defendants and PAPP have moved to dismiss the claims asserted against the City, Warden and PAPP under the Pennsylvania Wrongful Death and Survival Acts in Counts Five and Six of the Amended Complaint. Under the Wrongful Death Act, an individual plaintiff can bring an action "to recover damages for the death of an individual caused by the wrongful act . . . of another . . . ." 42 Pa. Cons. Stat. Ann. § 8301(a). Under the Survival Act, a cause of action "survive[s] the death of the plaintiff." Id. § 8302. However, "'wrongful death and survival actions are not substantive causes of action; rather, they provide a vehicle through which plaintiffs can recover for unlawful conduct that results in death.'" Johnson v. City of Phila., 105 F. Supp. 3d 474, 483 (E.D. Pa. 2015) (quoting Sullivan v. Warminster Twp., 765 F. Supp. 2d 687, 707 (E.D. Pa. 2011)) (additional citations omitted). Consequently, a plaintiff may bring wrongful death and survival act claims against a defendant as to whom that plaintiff has stated a substantive cause of action.

Because we have concluded that Count Three of the Amended Complaint states § 1983 claims against the City and against the Warden in his individual capacity, as well as a Rehabilitation Act claim against the City, and because these claims assert causes of action for wrongful acts that caused Jones's death, we conclude that the Amended Complaint states facially plausible claims under the Wrongful Death and Survival Acts related to Jones's death against the

City and the Warden. However, because we have dismissed the § 1983 and Rehabilitation Act claims asserted against PAPP, we conclude that there are no remaining substantive causes of action for which Plaintiff could recover against PAPP through claims under either the Wrongful Death or Survival Acts. Accordingly, we deny the City Defendants' Motion to Dismiss insofar as they seek dismissal of the claims asserted against the City and the Warden under the Wrongful Death and Survival Acts in Counts Five and Six of the Amended Complaint, and grant the Motion to Dismiss filed by PAPP insofar as it seeks dismissal of the Wrongful Death and Survival Act claims asserted against it in Counts Five and Six.

## IV.    CONCLUSION

For the foregoing reasons, we resolve the various Motions to Dismiss as follows. We grant the City Defendants' Motion to Dismiss with prejudice insofar as it seeks dismissal of the § 1983 claim for violation of Plaintiff's substantive due process rights asserted against the City in Count Seven of the Amended Complaint. Because CFCF is not an entity capable of suit, we grant the City Defendants' Motion to Dismiss the claims asserted against CFCF with prejudice and dismiss it as a Defendant in this case. We also grant the City Defendants' Motion to Dismiss with prejudice insofar as it seeks dismissal of the § 1983 claim asserted against the Warden in his official capacity in Count Three, the Rehabilitation Act claim asserted against the Warden in Count Three, and the § 1983 claim asserted against the Warden in Count Seven. We deny the City Defendants' Motion to Dismiss in all other respects. We dismiss the Motion to Dismiss filed by Browne and Palmer as moot insofar as it seeks dismissal of any claims brought against them under the Pennsylvania Constitution, and grant the Motion with prejudice in all other respects. We grant MHM's Motion to Dismiss with prejudice insofar as it seeks dismissal of the § 1983 claim asserted against it in Count One of the Amended Complaint, and deny its Motion in

all other respects.  We deny Corizon's Motion to Dismiss in its entirety.  Finally, we grant

PAPP's Motion to Dismiss with prejudice in its entirety and dismiss it as a Defendant in this

case.[14]

An appropriate Order follows.

BY THE COURT:


/s/John R. Padova_____
John R. Padova, J.

---

[14] As we construe the Amended Complaint, the claims that are proceeding after our resolution of the Motions to Dismiss are: the claims for negligence, medical malpractice, intentional infliction of emotional distress, and violation of Jones's Eighth and Fourteenth Amendment rights under § 1983 asserted against Corizon, its John Doe employees, MHM, and its Jane Doe employees in Count One; the claims for violation of Jones's rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment under § 1983, intentional infliction of emotional distress, false arrest, false imprisonment, abuse of process, and malicious prosecution asserted against Browne and Palmer in Count Two; the claims for violation of Jones's Eighth and Fourteenth Amendment rights under § 1983 asserted against the City and the Warden in his individual capacity in Count Three; the claim for violation of § 504 of the Rehabilitation Act against the City in Count Three; and the claims under the Wrongful Death and Survival Acts asserted against Corizon, its John Doe employees, MHM, its Jane Doe employees, Browne, Palmer, the City, and the Warden in Counts Five and Six.