**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| MICHELLE McDONALD-WITHERSPOON, | : | |
| Individually and as Administratrix of the | : | |
| ESTATE OF KENYADA JONES | : | |
| Plaintiff | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, WARDEN | : | CIVIL ACTION |
| GERALD MAY | : | No. 17-CV-1914 |
| and | : | |
| CORIZON HEALTH, INC., VIVIAN GANDY | : | |
| MD, MARIAMMA SAMUEL RN | : | |
| and | : | |
| MHM SERVICES, INC. a/k/a MHM | : | |
| CORRECTIONAL SERVICES INC., | : | |
| DEBORAH HARRIS-WHITE, LSW and | : | |
| CHERYL BALDWIN, MSW | : | |
| and | : | |
| AMBER E. BROWNE, JEANETTE PALMER | : | |
| Defendants | : | |

_____

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS
CORIZON HEALTH, INC. AND VIVIAN GANDY, M.D.**

**I.    MATTER BEFORE THE COURT**

Motion for Summary Judgment of Defendants Corizon Health, Inc. ("Corizon") and

Vivian Gandy, M.D. ("Gandy" or "Dr. Gandy") for dismissal all claims made by Plaintiff in her

Second Amended Complaint, including Plaintiff's claims relative to lost earnings/earning

capacity/economic losses, and for punitive damages.

**II.    FACTUAL BACKGROUND**

Moving Defendants incorporate by reference the Joint Concise Statement of Stipulated

Material Facts filed in support of their Motion for Summary Judgment, and the Joint Defense

Appendix.  This matter arises out of the death of Plaintiff's adult son, Kenyada Jones ("Jones"),

who died on July 2, 2016 while incarcerated at Curran-Fromhold Correctional Facility

("CFCF"), a correctional facility operated by the City of Philadelphia.   (Second Amended Complaint, Doc. 69, Exhibit "A" ¶2).[1]

Plaintiff's Second Amended Complaint alleges the following claims:

**Count I (Against Corizon, MHM, Gandy, Samuel, Marcinkowski, White and Baldwin):
Negligence/Medical Malpractice, Violation of Civil Rights Under 42 U.S.C. §1983,
Intentional Infliction of Emotional Distress, and Violations of
Section 504 of the Rehabilitation Act of 1973**

**Count II (Against Browne and Palmer)
Intentional Infliction of Emotional Distress, False Arrest/Imprisonment, Abuse of Process,
and Malicious Prosecution (state law claims) and Violations of Equal Protection Clause
and Due Process Clause Under 42 U.S.C. § 1983 (federal claims)**

**Count III (Against City of Philadelphia and May)
Violation of  Section 504 of the Rehabilitation Act of 1973**

**Count IV (Against All Defendants)
Wrongful Death**

**Count V (Against All Defendants)
Survival**

(Exhibit "A" generally).

Plaintiff made a claim for punitive damages against all defendants.   (Exhibit "A" generally).  Plaintiff made a claim relative to Jones' lost future earnings, loss of earning capacity, and economic losses, and "other financial and personal damages."  (Exhibit "A" ¶79).

At all times relevant hereto, Defendant City of Philadelphia ("City") provided healthcare services to the inmate population within the Philadelphia Department of Prisons by way of a contract with Corizon Health, Inc. ("Corizon").   (Exhibit "A" ¶¶3, 5) and the City provided mental health services to the inmate population within the Philadelphia Department of Prisons by way of a contract with MHM Correctional Services, Inc. ("MHM").   (Deposition of Cheryl Baldwin, Exhibit "B" p. 22 lines 5-10).  During the course of this litigation, Plaintiff named three

---

[1] Exhibit references correspond to the Joint Defense Appendix and exhibits referenced therein.

Corizon employees/former employees as defendants, including Vivian Gandy, M.D., Jennifer Macrinkowski, and Mariamma Samuel, R.N. Dr. Gandy remains a defendant. Jennifer Macrinkowski, who was named for the first time in Plaintiff's Second Amended Complaint (Doc. No. 69) was dismissed via Stipulation. (Doc. No. 78). Mariamma Samuel, R.N., also named for the first time in the Second Amended Complaint, no longer works for Corizon, and has never been served with the Second Amended Complaint (or any pleading).

It is undisputed that Dr. Gandy saw Jones on one occasion, upon Jones' intake at CFCF on June 29, 2016, directly following the intake assessment performed by Nurse Mariamma Samuel. (Intake Note of Nurse Samuel, Exhibit "K"; Progress Note of Dr. Gandy, Exhibit "M"). The assessment by Nurse Samuel noted that Jones was able to complete the screening, did not appear under the influence of alcohol or drugs, and did not appear to be a suicide risk. (Exhibit "K" p. 1). It noted that Jones appeared anxious, that he generally appeared visually normal, that he had high blood pressure, that he was taking medication for emotional or mental health problems, which were listed as Zyprexa, Depekote, Cogentin, Haldol, and Benedryl, and that he had been taking those medications for 20 years. (Exhibit "K" p. 2). It noted that Jones did not lack support of family or friends, that he was not worried about major problems, that he did not have a history of suicide attempts, that he did not show signs of depression, that he did not appear incoherent, that this was not his first incarceration, that none of his family members or significant other had attempted suicide, that he did not express signs of extreme embarrassment, shame, or humiliation as a result of incarceration, but that he did appear anxious. (Exhibit "K" pp. 3-4). It noted that Jones denied thinking about killing himself or feeling hopeless, and denied other signs and symptoms of mental illness. (Exhibit "K" p. 3). Jones relayed a history of

schizophrenia, manic depression, and mood swings for which he took medication, the last dose having been taken two days prior.  (Exhibit "K" p. 3).

In her written assessment, Nurse Samuel noted that Jones was alert and oriented, had no suicidal thoughts or ideations and that he was seen by Dr. Gandy.  (Exhibit "K", p. 4).  She initiated an urgent behavioral health referral.  (Exhibit "K", p. 4).  Following her review of Nurse Samuel's intake assessment and her own interaction with Jones, Dr. Gandy initiated an order for Amlodipine to address Jones' hypertension.  (Exhibit "M" p. 1; Exhibit "N").  She did not, as part of that order, direct that the medication be dispensed "no KOP."  (Deposition Excerpts of Dr. Gandy, Exhibit "M").  In other words, Jones was permitted to keep the medication on his person, with his 90-day supply to be dispensed in thirty-day increments in 30-pill blister pack. (Exhibit "M" p. 77).

Jones was found unresponsive in his cell on July 2, 2019 and was pronounced dead shortly thereafter.  (Medical Examiner's Report, Exhibit "V").  The Cause of Death noted on the Autopsy Report was noted to be Hypertensive Cardiovascular Disease with "Amlodipine Toxicity" noted under the heading "Other Significant Conditions."  (Exhibit "V").  The manner of death was classified as "Undetermined."  (Exhibit "V").

Plaintiff's Second Amended Complaint, in terms of what civil rights violations and/or negligent conduct Plaintiff is alleging, is cryptic.  In paragraphs Plaintiff's Second Amended Complaint alleges that Jones had a history of prior suicide attempts including attempted suicide by overdose of pills.  (Exhibit "A" ¶¶13-14, 34 and 72).  However, Plaintiff, Jones' mother with whom he lived for much of his life including the time leading up to his 2016 incarceration, disavowed these averments at her deposition, adamantly denying that Jones was ever suicidal or that he had engaged in any prior suicide attempts.   (Deposition Excerpts from Plaintiff's

Deposition, Exhibit "G" pp. 78, 168-169).  Specifically, Plaintiff testified: "Kenyada [Jones] has never attempted to commit suicide, ever."  (Deposition of Plaintiff, Exhibit "G" p. 168).  In response to the follow-up question, "It's specific in this allegation [of the Second Amended Complaint] that [Jones'] prior [suicide] attempts were by overdose of pills."  Plaintiff responded: **"That's a lie."**  (Exhibit "G" p. 168) (emphasis added).  Plaintiffs' other son and Jones' brother, Maneek Jones, also denied that Jones had ever been suicidal or that he had ever attempted suicide.  (Deposition of Maneek Jones, Exhibit "T" pp. 27-28).  Plaintiff has provided no documentary evidence of prior suicide attempts.  None of Plaintiff's experts opine that Jones committed suicide.  (See Reports of Nowakowski, Brown and Lofgreen, Exhibits "CC, DD, EE, and FF").

Since Plaintiff is not (or is no longer) alleging that Jones was suicidal or previously suicidal, and is therefore not alleging that Jones committed suicide by ingesting a fatal amount of Amlodipine, what actual wrongful conduct is being described in the Second Amended Complaint is unclear.  What "deliberate indifference" was perpetrated and how it relates to Jones' death is likewise unclear.  Plaintiff alleges that Amlodipine is a prescription medication used to control high blood pressure and that it was prescribed by Corizon employees.  (Exhibit "A" ¶43).  Plaintiff then alleges that Defendants' "wrongful actions of conscious and reckless disregard for Decedent's serious health risks violated consititute cruel and unusual punishment and deprivation of due process . . . . and resulted in Decedent's extreme pain, suffering and death." (Exhibit "A", Second Amended Complaint, ¶44).  Plaintiff, however, does not specify what the wrongful actions were or how they caused Jones' extreme pain, suffering, and death.  Jones had been taking his own medications just prior to intake at CFCF, and had been doing so for decades. (Exhibit "K").  Plaintiff continues: "The acts and omissions of defendants as averred herein

constituted a crime, actual fraud, actual malice and/or willful misconduct."   (Exhibit "A",
Second Amended Complaint, ¶¶45).  Again, Plaintiff does not specify what acts or omissions by
the defendants constituted a crime, actual fraud, actual malice and/or willful misconduct.
Plaintiff fails to specify, either in her Second Amended Complaint or in her expert reports, what
correctional standards or standards of care were violated, or what egregious conduct she is
referring to.

Given Plaintiff's unequivocal denial of any prior suicidal ideation or attempt by Jones,
Plaintiff's allegations are all the more confusing since she alleges Jones' death was preventable
and "occurred due to a delay, or failure to recognize, and acute confusional [sic] state, or
delirium, in a patient at high risk for suicide attempt."  (Exhibit "A" ¶37).  Further, Plaintiff
alleges in her Second Amended Complaint that Amlodipine was prescribed as "no KOP" and
that "due to the overcrowding and other ongoing problems at CFCF, the staff failed to follow
their own instructions."  (Exhibit "A" ¶33).  No discovery has been conducted on any purported
"overcrowding" and none of Plaintiff's experts have opined either that either (1) Amlodipine was
prescribed "no KOP" but administered "KOP" as is alleged in the Second Amended Complaint
or (2) that there was any overcrowding issue at CFCF.   Specifically, Dr. Gandy has testified that
she ordered the medication to be given "no KOP" as there was no reason to dispense it
otherwise.  (Exhibit "M" p. 44).  There is no evidence that Jones was in need of emergent
medical or mental care upon arrival at CFCF.   While Plaintiff alleges that Jones was in a
"desperate medical and psychiatric state" when provided with Amlodipine, she fails to cite to
any facts to support this claim.  (Exhibit "A" ¶¶44-45).  Jones' intake examination does not
reflect a manic, delusional, or psychotic presentation.  (Exhibit "K" and "M").  While Plaintiff
also avers that during his four days at CFCF, Jones was subjected to "extreme neglect, received

inadequate and improper medical and psychiatric treatment and medication, despite requests for improper treatment and medication, and was placed in improper housing given his condition" she fails to cite any facts to support this claim. (Exhibit "A" ¶31). Medical records indicate Jones received regular care from June 29 to July 2, 2019, including mental health care.

Plaintiff's expert reports likewise present little in the way of specifics as to the conduct of Gandy and Corizon, the standard of care applicable to that conduct, and how it was breached by Gandy and/or Corizon. Plaintiff has submitted the reports of three experts, Gregory P. Brown, M.D., Victor Lofgreen, Ph.D., and Bonnie Nowakoski, M.D. (Exhibits "CC, DD, EE, and FF"). Of these, only Brown and Nowakowski address the medical and/or psychiatric care rendered to Jones. Brown, a psychiatrist, addresses the conduct of MHM and also addresses the capacity of Jones to keep medicine on his person. (Exhibit "EE" p. 7). Dr. Brown opines that there is no way to determine why Jones ingested too much medication (yet seems to suggest someone should have foreseen this unlikely event for an inmate well-versed in self-administration of medication). (Exhibit "EE" p. 6). Brown does not articulate what the standard of care is for allowing an inmate/patient to keep medicine on his person, but nevertheless opines that allowing Jones to do so fell below the standard of care. (Exhibit "EE" p. 7). He does not mention Dr. Gandy by name and does not opine as to the standard of care applicable to her. (See Exhibit "EE").

Dr. Nowakowski produced two reports: one is unsigned, is dated April 14, 2017 (well over two years ago), and is labeled "preliminary." (Exhibit "CC"). The report indicates that no Philadelphia Prison System (PPS), American Correctional Association, or National Commission on Correctional Health Care (NCCHC) written policies were violated. (Exhibit "CC p. 1). Dr. Nowakoski did not review Dr. Gandy's testimony and does not mention her by name, nor is a

standard of care as to Dr. Gandy articulated. (Exhibit "CC" generally). In a subsequent unsigned report dated May 20, 2019 (Exhibit "DD"), Dr. Nowakoswki does not indicate she read Dr. Gandy's testimony or Jones' family members' adamant denials of prior suicide ideation or attempts. She does not cite to any correctional standard of care that was allegedly violated.

### III.  QUESTIONS PRESENTED

A.    Should the Plaintiff's claims against the Moving Defendants pursuant to 42 U.S.C. §1983 be dismissed?

SUGGESTED ANSWER:    Yes.

B.    Should the Plaintiff's claims against the Moving Defendants for negligence/malpractice be dismissed?

SUGGESTED ANSWER:    Yes.

C.    Should the Plaintiff's claims against the Moving Defendants for intentional infliction of emotional distress be dismissed?

SUGGESTED ANSWER:    Yes.

D.    Should the Plaintiff's claim for violation of Section 504 of the Rehabilitation Act of 1973 be dismissed?

SUGGESTED ANSWER:    Yes.

E.    Should Plaintiff's claim for punitive damages against Moving Defendants be dismissed?

SUGGESTED ANSWER:    Yes.

F.    Should Plaintiff's claim for prior earnings, projections of lost future earnings or loss of earning capacity as part of either fact or expert discovery?

SUGGESTED ANSWER:    Yes.

### IV.  LEGAL ARGUMENT

#### A.    Standards Applicable to Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the nonmovant. See id. at 252.

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." Id. at 249. Issues of fact are genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party". Id. at 248. A Court shall enter summary judgment when the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A fact is "material" if it might affect the outcome of the case under governing law. Id.

To establish that a fact cannot be or is genuinely disputed, a party must: (a) cite to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (b) show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Capriotti v. Allstate Property and Casualty Ins. Co., 2012 WL 3887043 (E.D. Pa.) (citing F.R.C.P. 56(c)(1)).

**B.    The Moving Defendants are Not Liable on Plaintiff's Alleged §1983 Claim As a Matter of Law.**

**1.    Dr. Gandy Was Not "Deliberately Indifferent" to a Serious Medical Need of Jones.**

The Eighth Amendment prohibition against cruel and unusual punishment is broad enough to proscribe "deliberate indifference to serious medical needs of prisoners [that] constitutes the 'unnecessary and wanton infliction of pain.'"  Estelle v. Gamble, 429 U.S. 97, 101 (1976).  Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious."  Id. at 103-104.  A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention.  Monmouth Cty. Correctional Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).   The prisoner has the burden of establishing that his medical need is "serious."  Hudson v. Macmillan, 503 U.S. 1 (1992).  A plaintiff ultimately bears the burden of establishing a causal connection between the deliberate indifference and his injuries.  Thomas v. Varano, 2012 U.S Dist. LEXIS 41228 (M.D. Pa.).

Deliberate indifference is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law." Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000).  As such, the "intent" of the state actor becomes critical.  Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).  Because Corizon is a state actor, employees of Corizon are considered prison officials.  Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference has been found where a prison official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or

recommended treatment." Hart v. City of Philadelphia, 2017 WL 3217137 (E.D. Pa.) (citing Rouse v. Plantier, 182 F.2d 192, 197 (3d Cir. 1999)). In order to avoid dismissal of a plaintiff's deliberate indifference complaint, the plaintiff must allege conduct that "shocks the conscience." Kopec v. Coughlin, 767 F. Supp. 463, 465 (S.D.N.Y. 1990), vacated on other grounds, 922 F. 2d 152, (2nd Cir. 1991), dismissal affirmed, 767 F. Supp. 467 (S.D.N.Y. 1991) (failure to provide inmate with new leg prosthesis over three-year period was not deliberate indifference).

In evaluating this deliberate indifference claim, the court needs to determine whether there is sufficient evidence from which a reasonable jury could find that Dr. Gandy acted with deliberate indifference toward Jones' serious medical and psychiatric needs: first, plaintiff must make an 'objective showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious; additionally, the plaintiff must'" make a 'subjective' showing that defendant acted with 'a sufficiently culpable state of mind. Estate of Kempf v. Washington County, 2018 U.S. Dist. LEXIS 155254 *42 (W.D. Pa.). Therefore, to succeed on his deliberate indifference claim against Dr. Gandy, Plaintiff must demonstrate that she had the requisite "culpable state of mind." See id.

Deliberate indifference is a higher standard than negligence and may be difficult to establish, because prison medical officials have leeway in diagnosing and treating inmates. Estelle, at 105-06. Thus, a mere violation of the "standard of care," such as negligence, will not suffice to rise to the level of a constitutional infringement. Pearson v. Prison Health Services, 850 F.3d 526, 538 (3d Cir. 2017), 850 F.3d at 538 (citing Estelle, 429 U.S. at 106). Notably, Plaintiff is challenged with identifying what serious medical need Jones actually had. Since Plaintiff denies Jones was suicidal, it would seem she was arguing that he had a nebulous "condition" that rendered him unable to comprehend how many pills he should take. This,

12

however is unclear, and moving Defendants submit that Plaintiff has not identified what "serious medical need" Jones had, how moving Defendants were deliberately indifferent to it, and what causal relationship exists between that indifference and Jones' death.  Certainly if Plaintiff's own experts cannot determine why Jones would have ingested too much medication, they cannot task corrections medical staff with forecasting that unlikely behavior.

In Pearson, a nurse examined the plaintiff-inmate and diagnosed him with a pulled muscle, when in actuality, he had appendicitis.  While the inmate claimed the nurse had delayed or denied him medical care, the Court noted it was undisputed that she had examined him, diagnosed him (albeit mistakenly), and decided not to elevate his condition based upon her opinion that it was not severe.  Pearson, at 538.  The Court held that the inmate's claim was that the nurse inadequately diagnosed and treated his medical condition.  Noting that the inmate had no circumstantial evidence suggesting that the nurse subjectively appreciated the true risk of harm, no reasonable jury could find that she acted with the "obduracy and wantonness" that violated the Eighth Amendment.  Id. at 539; see also Whitley v. Albers, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the [Eighth Amendment]"); see also Malles v. Lehigh County, 639 F. Supp.2d 566 (E.D. Pa.) (allegedly perfunctory examinations of inmate and failure of nurses to recognize rash as MRSA did not constitute deliberate indifference; at most, nurses' conduct amounted to negligence).

There is a critical distinction "between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment."  United States ex. rel. Walker v. Fayette County, 599 F.2d 573, 575 n.2 (3d Cir. 1979).  Although prison systems have a duty to provide prisoners with adequate medical care, the law is clear that simple medical

malpractice is insufficient to present a constitutional violation.  Durmer v. O'Carroll, 991 F. 2d 64, 67 (3d Cir. 1993) (citing Estelle, 429 U.S. at 106).   A Court will generally not find deliberate indifference when some level of medical care has been offered to an inmate.  Clark v. Doe, 2000 WL 1522855, at *2 (E.D. 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").  Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." United States ex rel. Walker v. Fayette County, 599 F.2d 573, 575 n.2 (3d Cir. 1979); see also Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  See Estelle, 429 U.S. at 105-106.

Prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners.  Durmer, at 67 (citing Inmates of Allegheny County Jail v. Pierce, 612 F. 2d 754, 762 (3d Cir. 1979) and White v. Napoleon, 897 F. 2d 103, 110 (3d Cir. 1990)).  It is black letter law that neither a mere disagreement between the inmate-patient and his doctor, nor a mere refusal to provide an inmate with his or her requested course of treatment constitutes a constitutional violation.  Abu-Jamal v. Wetzel, 2017 WL 34700 (M.D. Pa. 2017) (citing Dulak v. Corizon, Inc., 2015 U.S. Dist. LEXIS 131291, *29 (E.D. Mich. 2015)).

A complaint that a prison or jail medical official "should have ordered additional observation is no more than a 'mere disagreement as to the proper medical treatment' that does not 'support a claim of [a constitutional] violation *unless* the defendant's "response *so deviated* from professional standards of care that it amounted to deliberate indifference.'" Pearson, 850 F.3d at 538, 543.  In other words, liability may be imposed only when the decision

by the professional is *such a substantial departure* from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.   Youngberg v. Romeo, 457 U.S. 307 (1982) (emphasis added).

In Farmer v. Brennan, 511 U.S. 825, 837 (1994), the Supreme Court held that finding a prison official liable for violating a prisoner's Eighth Amendment rights requires proof that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  To survive a summary judgment motion on this issue, Plaintiff must point to some evidence beyond his "raw claim" that the moving Defendants were "deliberately indifferent," or put another way, some evidence that the moving Defendants knew or were aware of the risk to Plaintiff.  See Natale, at 582.

There is no evidence, direct or circumstantial, to make the inferential leap demonstrating that Dr. Gandy had a subjective awareness that Jones, whose only behavior of note upon intake was that he was "anxious" (not unusual for an incoming inmate), had a medical condition that put him at a risk that was not being addressed.  See Miller v. Steele-Smith, 2017 WL 5125625 (3d Cir. 2017) (citing Farmer, 511 U.S at 837) (explaining that a prisoner asserting an Eighth Amendment claim must show that "the [prison] official ... [was] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [that the prison official also drew] the inference").  There is no evidence that Dr. Gandy (1) knew Jones had a need for urgent treatment but intentionally refused to provide it; (2) delayed necessary medical treatment based on a non-medical reason; or (3) prevented Plaintiff from receiving needed or recommended treatment."  See Hart v. City of Philadelphia, 2017 WL 3217137 (E.D. Pa.).  An official who is not aware of a substantial risk cannot be held liable under the Eighth Amendment.

15

Farmer, 511 U.S. 825, 837.  The courts, in assessing a §1983 claim, "presume that the treatment of a prisoner is proper *absent evidence* that it violates professional standards of care."  Pearson, 850 F.3d at 535 (emphasis added); Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) (citing Youngberg, at 322-323).  Allegations that prison medical personnel failed to diagnose or properly treat a medical condition do not demonstrate deliberate indifference.  Pearson, at 538; see also Ponzini v. PrimeCare Medical, Inc., 269 F. Supp. 3d 444, 520 (M.D. Pa. 2017)  (prison physician's failure to ascertain correct dose of Paxil when resuming prisoner's medication, which allegedly contributed to his suicide, did not constitute deliberate indifference).

Here, the elements of intent and subjective awareness are absent.  Plaintiff's own expert, Nowakowski, concedes that Dr. Gandy's conduct *did not violate* any Philadelphia Prison System (PPS), American Correctional Association, or National Commission on Correctional Health Care (NCCHC) policies.  (Exhibit "CC p. 1).   Dr. Brown likewise articulates no standard of care or policy applicable to Dr. Gandy that was not followed.[2]  In Ponzini, where the inmate met with two members of the nursing staff, a mental health provider, and other medical staff in his four days as a pretrial detainee, although the care he received may have been negligent and a factual cause of his suicide, the Court held that no reasonable jury could conclude that the acts and omissions of any of the individual defendants violated his constitutional right to adequate medical care.  Ponzini, at 522.

To the extent the record demonstrates any culpability on the part of CFCF staff such as Dr. Gandy, it does not rise above negligence or simple medical malpractice.   Plaintiff's disagreement with Dr. Gandy's prescribed means of administering high blood pressure medication that Jones took *outside* of prison, along with many other medications, is insufficient

---

[2] While there is a body of case law applicable to prisoners with demonstrated suicidal propensities, Plaintiff has so adamantly denied any such prior ideation or attempt, so much so that she called the Second Amended Complaint a "lie," it is unclear exactly what claim she is pursuing.

to establish deliberate indifference, particularly in the face of an overall benign intake examination and no history of abuse of medications; indeed Plaintiff herself denies that Jones ever attempted anything resembling an overdose on pills.

Since Plaintiff cannot maintain a claim for deliberate indifference merely by alleging errors in medical judgment, or challenging the quality of care Jones received, she cannot demonstrate deliberative intent or improper motive on the part of any of the moving Defendants, and Count I of Plaintiff's claim must be dismissed with prejudice against Dr. Gandy.  See Nichols v. Phillips, 2018 U.S. Dist. LEXIS 214005 *7 (E.D. Pa. 2018).  Assuming Plaintiff can even establish that Jones had a serious medical need, or make the causal connection between the unspecified "deliberate indifference" of Dr. Gandy and Jones' death, she cannot distinguish this case from those alleging errors in medical judgment, which do not rise to the level of a civil rights violation.

### 2. Defendant Corizon Health, Inc. Is Not Liable on Plaintiff's Alleged §1983 Claim as a Matter of Law.

When evaluating a claim brought under 42 U.S.C. §1983, the Court must first "identify the exact contours of the underlying right said to have been violated" in order to determine "whether [the plaintiff] has alleged a deprivation of a constitutional right at all."  Natale v. Camden County Correctional Facility, 318 F.3d 575, 580-81 (3d Cir. 2003).  If so, the analysis then shifts to a determination of whether the state actor, in this case Corizon, can be held liable for that violation.  Id.  (citing Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000)).  A prisoner's claim for inadequate medical care arises under the Eighth Amendment, as articulated by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 103–04 (1976) (finding that a failure to provide adequate medical care constitutes cruel and unusual punishment).

A private company that contracts with a municipality to provide health care to inmates is acting under color of state law when it provides medical services to those inmates.  See Natale, 318 F.3d at 581; see also 13a, Cmplt., ¶73).   The focus then is whether the contractor's employees violated the inmate's constitutional rights.  Natale, 318 F.3d at 582.  However, even assuming *arguendo* that Dr. Gandy violated Plaintiff's constitutional rights, Corizon itself is protected from liability under 42 U.S.C. §1983 pursuant to Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978).

Monell provides that a private corporation contracted by a municipality to provide inmate healthcare is treated like the municipality itself, and cannot be held liable under §1983 on a theory of *respondent superior*.   Assessing liability against the private corporation in such circumstances is limited to a situation where a *policy* or *custom* of the corporation is implicated.  Weigher v. Prison Health Servs., 402 Fed.Appx. 668, 669-70 (3d Cir. 2010); Gannaway v. Prime Care Med., Inc., 150 F. Supp. 3d 511, 530 (E.D. Pa. 2015); Jefferson v. Husain, 2016 WL 1255731 at *13 (E.D. Pa. 2016).

It is undisputed that Corizon is a private corporation contracted by the Philadelphia prison system.  As such, the issue before the Court is whether a "policy or custom" of Corizon is implicated so as to allow for the imposition of liability upon Corizon pursuant to §1983.  Corizon can only be held liable if plaintiff can provide evidence that it had a relevant policy or custom that *caused* the constitutional violation he alleges.  Oklahoma v. Brown, 520 U.S. 397, 404 (1997); Natale, 318 F.3d at 583–84 (emphasis added).

> Not all state action rises to the level of a custom or policy. A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212  (3d Cir.1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 452 (1986).  A custom is an act "that has not been formally approved by an appropriate

decisionmaker," but that is "so widespread as to have the force of law."  Oklahoma v. Brown, 520 U.S. at 404.

Natale, at 584.

More specifically, there are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under §1983.  The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  Oklahoma v. Brown, 520 U.S. at 417.  The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."  Id.  Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"  Id. at 417–18 (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989)); see also Berg, 219 F.3d at 276 (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

Discovery has adduced no evidence of a policy or custom enacted by Corizon that amounts to deliberate indifference to Jones' medical needs, nor has the Plaintiff adduced any evidence that any Corizon official with final policymaking authority acted with deliberate indifference to Jones' need for adequate medical care.[3]  Evidence as to how the inmate himself was treated is not evidence that Corizon has a custom or policy that caused his rights to be violated.  See Beard v. Corizon Health, Inc., No. 2017 WL 368037 *4 (E.D. Pa.) (holding that

---

[3] Plaintiff deposed no Corizon representative other than Dr. Gandy and Ms. Marcinkowski (now dismissed).

isolated conduct relating to plaintiff's treatment was not evidence of a custom or policy that caused plaintiff's rights to be violated in that it did not show promulgation of a policy, did not demonstrate violation of federal law, and did not demonstrate failure to in the face of an obvious need to prevent its agents from violating inmates' constitutional rights); see also Lomax v. City of Philadelphia, 2017 WL 1177095 (E.D. Pa.) (where evidence in the record concerned only the treatment of the plaintiff himself, he failed to raise a genuine issue of material fact as to custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs, and summary judgment was therefore appropriate).

Plaintiff has offered no expert report opining as to Corizon policy, custom and/or practices.  Plaintiff has taken no deposition of any Corizon official or administrator.  Plaintiff cannot offer any evidence that Corizon has a custom or policy that caused Jones' rights to be violated, as is required to maintain a cause of action pursuant to §1983 against Corizon.  The appropriate resolution in the absence of evidence of an unconstitutional custom or policy is entry of summary judgment in Corizon's favor.  Brower v. Corizon Health Services., Inc., 2016 WL 2346754, at *3 (E.D. Pa. 2016) (dismissing deliberate indifference claim against City-contracted health care provider where plaintiff failed to allege a custom, policy, or identify a policymaker). Accordingly, summary judgment in favor of Corizon on Count I of Plaintiff's Second Amended Complaint for "deliberate indifference" is warranted and appropriate.

    **C.**    **Moving Defendants Are Entitled to Summary Judgment on Plaintiff's Claims of Negligence/Medical Malpractice.**

        **1.**    **Dr. Gandy Is Not Liable for Negligence/Malpractice.**

As noted above, while two of Plaintiff's experts criticize the medical care received by Plaintiff, the allegations are vague and sweeping and in the instance of Brown, do not even mention Dr. Gandy by name.  Plaintiff's experts do not articulate any particular standard of care

that Dr. Gandy breached, do not describe how she breached the standard of care, and do not describe how the specific breach caused harm to Plaintiff, especially since express uncertainty about how Jones died.

Establishing a prima facie case of medical malpractice in Pennsylvania generally requires expert testimony as to the applicable standard of care.  Miville v. Abington Memorial Hospital, 377 F. Supp. 2d 488 (E.D. Pa. 2005); Welsh v. Bulger, 698 A.2d 581, 585 (Pa. 1997). ("[A] plaintiff must present expert testimony to establish to a reasonable degree of medical certainty that the defendant's acts deviated from an accepted medical standard, and that such deviation was the proximate cause of the harm suffered.").  The expert testimony requirement in a medical malpractice action means that a plaintiff must present medical expert testimony to establish that the care and treatment of the plaintiff by the defendant fell short of the required standard of care, and that the breach proximately caused the plaintiff's injury.  Toogood v. Owen J. Rogal, D.D.S., P.C., 824 A.2d 1140 (Pa. 2003).

Moving Defendants respectfully submit that Plaintiff's experts fail to articulate what particular standard of care applied to Dr. Gandy at her singular visit with the Plaintiff, and how she specifically breached that standard within the context of the chronology of correctional care. In that Plaintiff has produced scant expert opinion, which fails to articulate the applicable standard of care, breach, and causation, as to Dr. Gandy's role in Jones' death, Plaintiff's claim for medical malpractice/negligence against Dr. Gandy fails.

### 2.    Corizon is Not Liable on Plaintiff's Negligence/Malpractice Claim as a Matter of Law.

If possible, Plaintiff's expert reports offer even less of a basis to meet Plaintiff's burden of proof against Corizon.  Just as it must be presented to support a claim of medical malpractice against an individual health care professional, expert testimony is required to demonstrate

corporate negligence. See Welsh, 698 A.2d at 585. Again, the Court must look to the substance of the expert's testimony. Id. Plaintiff's expert opinions are insufficient to survive summary judgment. See Fox v. Horn, 2000 WL 49374 *8 (E.D. Pa.).

At the summary judgment stage, Plaintiff must present expert evidence of a standard of care, how Corizon deviated from that standard, and how that deviation lead to substantial harm. Id. The accepted standard of care is an essential part of the expert testimony without which the factfinder cannot make an informed judgment as to whether the defendant has been negligent. Id. In this context, it is important to compare Corizon with like institutions. Id. Nowakowski in fact found that Corizon had violated no applicable correctional standard. As neither expert provides evidence of an accepted standard at any correctional institution, a jury cannot find that Corizon was similarly situated and had violated that standard. Since Plaintiff has not presented sufficient evidence to support a claim of corporate negligence against Corizon, entry of summary judgment in Corizon's favor on this count of Plaintiff's Complaint is warranted.

### D. Plaintiff's Claims Against Moving Defendants for Intentional Infliction of Emotional Distress Fails as a Matter of Law.

Under Pennsylvania law, a plaintiff must "demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress" in order to state a claim for intentional infliction of emotional distress. Reeves v. Middletown Athletic Association, 866 A.2d 1115, 1122 (Pa. Super. 2004). This has been defined as conduct "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." Id. at 1122 n.5 (quoting Hoy v. Angelone, 554 Pa. 134, 720 A.2d 745, 754 (1998)). To sustain a claim for intentional infliction of emotional distress against moving Defendants, Plaintiff must allege facts that rise to the level of outrageousness required to support a such a claim. Taylor v. City of Philadelphia,

2001 WL 1251454 at *1.  In addition to alleging outrageous conduct, the plaintiff must also suffer physical harm resulting from the conduct.  Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998).

Courts applying this standard have been reluctant to label conduct "outrageous" so as to allow recovery.  Hightower v. City of Philadelphia, 1995 WL 68661 (E.D. Pa. 1995).  Moreover, courts applying Pennsylvania law have found intentional infliction of emotional distress only where the defendant's conduct was "atrocious" and "utterly intolerable in a civilized community."  Id. (citing Restatement (Second) of Torts § 46, comment d (1965)).  See Classen v. Nutter, 2017 WL 6017341 (E.D. Pa.) (dismissing inmate's claim for intentional infliction of emotional distress where no intentional, extreme or outrageous conduct was identified).

Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct.  See e.g., Papieves v. Lawrence, 263 A.2d 118 (Pa. 1970) (defendant, after striking and killing plaintiff's son with an automobile, and after failing to notify authorities or seek medical assistance, buried the body in a field where it was discovered two months later); Banyas v. Lower Bucks Hospital, 437 A.2d 1236 (Pa. Super. 1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d. Cir. 1979) (defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

In contrast to the extreme conduct outlined above, and addressing the context of health care within the prison setting, in Wilson v. Jin, 698 Fed. Appx. 667 (3d Cir. 2007), an inmate was given extensive medical care over a period of several months.  The Court noted that while

the plaintiff-inmate may disagree with the treatment he was provided, this did not render the medical defendants' conduct outrageous or extreme, and summary judgment was entered in favor of the medical defendants on the inmate's claim for intentional infliction of emotional distress.  Wilson, at 673.  Plaintiff has presented no facts that rise to the level required to maintain a cause of action for intentional infliction of emotional distress against any of the moving Defendants.  Dr. Gandy saw Jones one time for a routine intake examination and prescribed medication in due course for an individual well-versed in taking prescription medication independently.  Accordingly, entry of summary judgment in favor of Corizon and Gandy on Plaintiff's claim for Intentional Infliction of Emotional Distress, as set forth in Count I of Plaintiff's Complaint is warranted and appropriate.

### E.   Plaintiff Cannot Make Out a Claim for Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §701.

In Count I of her Second Amended Complaint, Plaintiff asserts a claim for a violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §701.  Section 504 prohibits recipients of federal funding from discriminating against an individual because of a disability, stating:

> No otherwise qualified individual with a disability. . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . .

29 U.S.C. § 794(a).

As a private company contracted with the City to provide medical services to its prison population, as set forth in the attached Affidavit of J. Scott King, Esquire, Corizon is not a recipient of federal assistance or funding.  (Affidavit of J. Scott King, Esquire, Exhibit "D" ¶4).  Plaintiff may therefore not recover against Corizon on this claim as set forth in Count I of her Second Amended Complaint.

### F.        Plaintiff May Not Recover Punitive Damages from Moving Defendants.

In her Second Amended Complaint, Plaintiff requests the imposition of punitive damages.   Moving Defendants respectfully submit that punitive damages are not available against them.

"Neither mere negligence, nor even gross negligence, shows sufficient culpability to justify a punitive damage award." Castetter v. Mr. B Storage, 699 A.2d 1268, 1271–72, (Pa. Super. 1997).  Assessment of punitive damages is proper "only in cases of outrageous behavior, where defendant's egregious conduct shows either an evil motive or reckless indifference to the rights of others." Bannar v. Miller, 701 A.2d 232, 242 (Pa. Super. 1997).   An individual defendant may be held liable in his or her individual capacity for punitive damages only if the actions are motivated by "evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). Plaintiff bears the burden of proving that the individual officials acted recklessly or callously, at minimum, and when the plaintiff does not, summary judgment on all punitive damages claims against the individual defendants in their individual capacities is appropriate.  See Friedman v Bethel Park Police Department, 2010 WL 1714036 (W.D. Pa.).

The record is devoid of any evidence of evil motive or intent, any reckless or callous indifference to Plaintiff's rights, or any outrageous conduct on the part of moving Defendants Corizon and Gandy.   See Williams v. Syed, 782 A.2d 1090 (Pa. Commw. 2001) (dismissing claim for punitive damages in negligence claim by state prison inmate where facts did not demonstrate requisite level of behavior required to impose such damages).  This is not a case of refusal to provide care, but rather of Plaintiff challenging the adequacy of his care.  As such, Plaintiff's claim for punitive damages against moving Defendants cannot be maintained.

**G.      Plaintiff Is Unable to Maintain a Claim for Lost Earnings, Lost Earning Capacity, or Economic Damages.**

In Plaintiff's Second Amended Complaint, and specifically in Count IV for Wrongful Death, she makes a claim for loss of Jones' future earnings, loss of earning capacity, and economic losses, and "other financial and personal damages."  (Second Amended Complaint, Doc. 69, Exhibit "A" ¶79).  Assuming *arguendo* that the Court does not dismiss Plaintiffs' claims in their entirety, Plaintiff has produced no evidence of Jones' prior earnings, projections of lost future earnings or loss of earning capacity as part of either fact or expert discovery. Specifically, Plaintiff has not produced any tax returns, wage history, or information regarding places where he worked during his lifetime.  Plaintiff has produced no evidence of any other economic losses.  The only evidence Plaintiff has produced, as late as this month, is that Jones was a "hard worker" during his lifetime, and that Plaintiff is "still searching' for evidence of his earnings.  (Exhibit "GG").  Plaintiff's claim for this category of damages should therefore be dismissed with prejudice for lack of evidence, and an absence of expert testimony as to projected lifetime earnings and earning capacity.

## V.      CONCLUSION

For the reasons set forth in the accompanying Brief, Defendants Corizon Health, Inc. and Vivian Gandy, M.D. request entry of judgment in their favor and against Plaintiff and for dismissal of Plaintiff's claims against them as set forth in Count I of Plaintiff's Complaint for: violation of civil rights pursuant to 42 U.S.C §1983, negligence/medical malpractice, intentional infliction of emotional distress, violation of Section 504 of the Rehabilitation Act of 1972, and further dismissing all claims for lost earnings/earning capacity/economic damages and all claims for punitive damages.

O'CONNOR KIMBALL LLP

By:           /s/

Thomas J. Gregory, Esquire
Lisa A. Cauley, Esquire
Two Penn Center Plaza, Suite 1100
1500 John F. Kennedy Boulevard
Philadelphia, PA 19102
(215) 564-0400      Facsimile: (215) 564-1973
Emails: tgregory@okllp.com / lcauley@okllp.com
Attorneys for Corizon Health, Inc. and Vivian
Gandy, M.D.

Dated: __June 17, 2019_____

27

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

MICHELLE McDONALD-WITHERSPOON,                     :
Individually and as Administratrix of the          :
ESTATE OF KENYADA JONES                             :
                Plaintiff              :
     v.                                            :
                                              :
CITY OF PHILADELPHIA, WARDEN                        :        CIVIL ACTION
GERALD MAY                                          :        No. 17-CV-1914
              and                          :
CORIZON HEALTH, INC., VIVIAN GANDY                  :
MD, MARIAMMA SAMUEL RN                              :
              and                          :
MHM SERVICES, INC. a/k/a MHM                        :
CORRECTIONAL SERVICES INC.,                         :
DEBORAH HARRIS-WHITE, LSW and                      :
CHERYL BALDWIN, MSW                                 :
              and                          :
AMBER E. BROWNE, JEANETTE PALMER                    :
                Defendants             :
_____

## CERTIFICATE OF SERVICE

     I, Lisa A. Cauley, Esquire, hereby certify that I caused a true and correct copy of the foregoing Motion for Summary Judgment to be electronically filed with the Court on this 17th day of June, 2019, and thereby served the following counsel of record via the Court's ECF system upon the following:

Stephen H. Cristal, Esquire
Goldfein & Joseph, PC
1800 John F. Kennedy Boulevard, 20th Floor
Philadelphia, PA 19103-7425

Shannon G. Zabel, Esquire Cassidy L. Neal, Esquire
City of Philadelphia Law Department Matis Baum O'Connor
1515 Arch Street, 14th Floor 912 Fort Duquesne Boulevard
Philadelphia, PA  19102 Pittsburgh, PA 15222


O'CONNOR KIMBALL LLP

By: _____/s/_____
   Thomas J. Gregory, Esquire
   Lisa A. Cauley, Esquire
   Two Penn Center Plaza, Suite 1100
   1500 John F. Kennedy Boulevard
   Philadelphia, PA 19102
   (215) 564-0400 Facsimile: (215) 564-1973
   Emails: tgregory@okllp.com / lcauley@okllp.com
   Attorneys for Corizon Health, Inc. and Vivian
   Gandy, M.D.

Dated: ___June 17, 2019_____